```
                    UNITED STATES DISTRICT COURT

                   NORTHERN DISTRICT OF CALIFORNIA

              BEFORE THE HONORABLE RICHARD SEEBORG, JUDGE

------------------------------)
                              )
DEE HENSLEY-MACLEAN, on        )
behalf of themselves and       )
those similarly situated,      )
                              )
              Plaintiffs,      )
                              )
    v.                         )    No. C 11-1230 RS
                              )
SAFEWAY, INC.,                 )
                              )
              Defendant.       )    San Francisco, California
                              )    Thursday, June 9, 2011
------------------------------)       (20 pages)


                       TRANSCRIPT OF PROCEEDINGS

APPEARANCES:


For Plaintiffs:          Center for Science in the
                            Public Interest
                         5646 Milton Street
                         Suite 714
                         Dallas, Texas 75206
                   BY:   STEPHEN HENRY GARDNER

For Defendant:           Latham & Watkins, LLP
                         505 Montgomery Street
                         Suite 2000
                         San Francisco, California 94111
                   BY:   STEPHEN STUBLAREC
```

1  <u>Thursday, June 9, 2011</u>

2                                                    (11:37 a.m.)

3        **(In open court)**

4        DEPUTY CLERK:  Calling C 11-1230, Hensley-McLean, et al., vs. Safeway, Inc.  Please come forward and state your appearances.

7        MR. GARDNER:  Stephen Gardner, Center for Science in the Public Interest, here on behalf of the plaintiffs

9        THE COURT:  Good afternoon.

10       MR. STUBLAREC:  Stephen Stublarec for Safeway.

11       THE COURT:  Good afternoon.  This is a motion that's brought in the case involving the Safeway Club card program. I'll tell you:  I'm not a club card participant, so there won't be any problems with that.

15       MR. STUBLAREC:  We'll take care of that, your Honor.

16       THE COURT:  Right.  My understanding, it's a punitive class action here that addresses in particular the obligation, as I understand it, of Safeway with respect to the database it develops by virtue of this program and whether or not that -- plaintiffs' position is that there is a viable claim that Safeway should be required to utilize that database in the context of recalls.  Is that a fair summary of the nature of the claim?  I know you have a duty to warn, imply warranty, but was that a fair description of the claim?

1            MR. GARDNER:  Without the club card, we would not be
2      bringing suit against Safeway, no, Sir.
3            THE COURT:  The motion, as I understand it from
4      Safeway, is to dismiss, or stay, really, on two different
5      bases.  One is the primary jurisdiction argument:  That I
6      should exercise discretion to dismiss or stay pending the
7      FDA's regulations flowing from the recently enacted FSMA,
8      because there's some notion that consistent with that
9      Congressional statute there are going to be some regulations
10     about recalls, product food recalls and how those are to be
11     handled.
12           The second argument is an equitable extension
13     argument under California law to dismiss the equitable
14     claims.
15           This is sort of a long-winded preamble, but let me
16     just say:  It's an interesting case.  I have to say, I have
17     some skepticism about the overall viability of the claims,
18     but perhaps plaintiffs will be able to convince me that they
19     are viable.
20           At the same time, I don't see as a basis to dismiss
21     or stay the particular grounds that are in front of me at
22     this time, and the reason for that is with respect to the
23     primary jurisdiction argument, for what I see in the papers,
24     I even, with the understanding that the FDA is going to
25     be -- issues regulations about the Food Safety Modernization

1  Act, I don't get any -- there seems to be no expectation
2  they are going to address the particular relief that
3  plaintiffs are seeking.  At most, it's going to be with
4  respect to the posting of notice and -- about recalls and
5  the like.  And that the particular relief that plaintiffs
6  are seeking, which is an affirmative duty on the part of
7  Safeway to reach out to customers by virtue of the database,
8  is no one is contemplating that is going to be the subject
9  of the FDA's reg.  So in primary jurisdiction, for me to
10 either stay or dismiss, would be an expectation that I'm
11 doing that because a regulatory agency is going to address
12 these issues, and I shouldn't muddy the waters.
13         I don't see that as being a very likely prospect here
14 such that I'm disinclined to go that route.
15         With respect to the abstention doctrine under
16 California law, I recognize under certain circumstances you
17 accord deference to the state's administrative agencies when
18 state -- legal issues are being addressed by those
19 authorities, but I don't really see how that is triggered in
20 our circumstance.
21         So, that's -- I guess there's a little something for
22 everyone here, perhaps the bigger question at some point
23 plaintiffs will have to address to me, because the four
24 claims for relief, I have some question about.
25         And then the fifth claim, as I understand it, for

1  plaintiff Rosen, which pertains to the CLRA, my reaction
2  was, I was somewhat skeptical, but that's not the subject of
3  the motion.  I just thought I would tell you that so you
4  know that I have some issues that need to be resolved.
5         So, the particular bases for the motion, I am
6  inclined to deny.
7         So, I'll let you begin, Mr. Stublarec.
8         MR. STUBLAREC:  Thank you.  Your Honor, thank you,
9  that's very helpful.  I have to be honest and say I wish I
10 would -- the Court had pointed it in a different direction,
11 but it does give me the framework for my discussion.
12        Let me start off by setting the stage just for a
13 moment, if I may.
14        I think, with everything that's before the Court,
15 it's undisputed that there is a comprehensive regulatory
16 system, both at the federal level and at the state level,
17 that deals with recalls of food products.  No question about
18 that.  I know the Court has worked its way through some of
19 these regs.  If there was ever a prototype of a
20 comprehensive regulatory system, this is a good example of
21 it.
22        The system already includes provisions governing
23 recall notifications.  That's discussed at Page 7, Lines 13
24 through 21 of our moving papers, but they're already in
25 there.  How you give notice of a recall.

1       THE COURT: I suppose -- and this goes back to my
2  preliminary comments -- isn't some of what you just said --
3  and I'm not exactly sure how it would be styled, but it
4  almost sounds more along the lines of a preemption type of
5  argument as opposed to a primary jurisdiction dismiss or
6  stay because something's coming, and something's coming, and
7  it's going to essentially address these concerns, one way or
8  the other. It's either going to say the relief that
9  plaintiffs are seeking is not, you know, not available, if
10 you will, or it's going to embrace it and -- thus rendering
11 their claim moot.
12      But -- so, but the -- what you've just said and the
13 argument you're making doesn't really go to the primary
14 jurisdiction question, it goes more to, the field is
15 occupied by the regulatory processes and therefore you
16 should not be in this --
17      MR. STUBLAREC: Yes, we've used various -- waded in
18 the waters --
19      THE COURT: Whatever metaphor.
20      MR. STUBLAREC: Whatever metaphor. Your Honor, we're
21 not arguing preemption as a result of this complex,
22 comprehensive regulatory scheme. But it does seem to us
23 it's a perfect example of a doctrine of primary
24 jurisdiction. These agencies, the FDA, for most food
25 products, and the USDA, together, have comprehensive

1    jurisdiction over food and drug safety issues, including the
2    issue of recalls.  They have already specified how they
3    think notice of recalls should be given.  Pursuant to the
4    recently enacted Food Safety Modernization Act, there is
5    more on the way that will specifically address how grocers
6    are supposed to give notice of recalls.  At a minimum, your
7    Honor, if the Court is going to entertain this at all, we
8    think the Court ought to wait and see what these regulatory
9    agencies think is the right way to do this.  This is a huge
10   undertaking that the plaintiffs are suggesting here.
11            I want to spend a few minutes of the Court's time --
12            THE COURT:  Is there any suggestion -- and I realize
13   it's always dangerous to speculate about how at the end of
14   the day a regulation is going to look, and I understand
15   that's part of your argument as to why we need to wait, but
16   is anyone proposing in the context of the public notice
17   process that the FDA issue regulations that require a
18   retailer to use its database and affirmatively reach out to
19   the customers, electronically or otherwise?  Is that a
20   proposal on the table?
21            MR. STUBLAREC:  Not that I'm aware of, and for this
22   reason, your Honor:  Maybe it would be helpful for me to
23   tell the Court about Safeway's programs.  Unlike myself, the
24   Court is apparently not a member.
25            THE COURT:  I'm not part of it, but that doesn't mean

1  I don't know what it is.
2          MR. STUBLAREC: But here is how it works in Safeway's
3  case, and then I want to turn to how it works in the case of
4  other retailers, because the Court recalled that at
5  Paragraph 39 of the complaint, they had this laundry list of
6  retailers who supposedly do use their database: Costco,
7  Wal-Mart, Sam's Club -- they go on and on -- and they
8  basically say, Hey, Safeway ought to do it like these
9  folks -- ought to do it -- or are doing it now.
10         Safeway's club card program, you can get a club card,
11 as I did, standing in the checkout line, buying a can of
12 peanuts. It takes two seconds. If you give them a name --
13 now, the form they're going to give you asks for more
14 information. But if you give Safeway a name, you're going
15 to get a club card, right then and there. You don't have to
16 give them any contact information. You don't -- certainly
17 don't have to give them any e-mail information. Safeway
18 does not require any of its club card members to update the
19 information that's in the database. I was discussing with
20 Mr. Sturdevant this issue the other day, and I said, Gee,
21 I've had my club card for so long I can't remember whether I
22 was living at my current house when I filled out the form
23 standing in the check stand line or whether I was living at
24 my old place, but I do know I've never updated it.
25         There are customers, many customers in this

1  environment, who want the benefits of the program but are
2  concerned about privacy.  We read that in the newspaper
3  every day.  So they give not their true, accurate name.  But
4  if you give Safeway a name, you're going to get a club card.
5  And then you just hand them the club card every time if you
6  want make a purchase.  And for Safeway's purchases,
7  collecting the data about the purchases by whoever is
8  holding that card, that's all Safeway needs.
9         Now, just briefly your Honor, Costco --
10         THE COURT:  But how does any of this, and I
11 appreciate the background, but how does that go to your
12 primary jurisdiction or abstention argument?  I mean, I
13 understand that's how it works, and I know that you're going
14 to be making the vigorous argument that because of the
15 nature of the program and other issues, Safeway should not
16 be put in the position of having an affirmative duty in the
17 context of recalls to utilize its database, in part because
18 it's not an effective way to do it, by virtue of the nature
19 of the program.
20         But that -- let's focus on primary jurisdiction and
21 equitable abstention.
22         MR. STUBLAREC:  Because for a long time in the past
23 and currently and going forward, the people who really know
24 this stuff, the FDA and the USDA, have been looking at
25 issues just like this, and surely this thought has occurred

1   to them.  I mean, plaintiffs' counsel has been involved in
2   the process by which the Food Safety Modernization Act was
3   adopted.  This is not something that -- these loyalty
4   programs are not something that's a secret or that these
5   agencies of the government, the FDA and the USDA, don't know
6   about.  But they are the people who, in the a myriad of
7   different situations, are charged with Congress -- charged
8   by Congress with figuring out what's effective under the
9   circumstances.  That's the process they're in right now.
10          And with respect, your Honor, and I've got a long
11  argument prepared on this, I don't see how this Court's
12  going to do it.  They are asking to certify a nationwide
13  class and impose some kind of mandatory injunction on
14  Safeway.
15          Now, I have had the great privilege of representing
16  Safeway for 25 years or so, so I've been involved in some of
17  these issues.  Some recall issues are confined to a single
18  store.  Something falls in the meat grinder.  Some recall
19  issues are confined to a limited geographic area.  I believe
20  it's relatively rare for a recall issue to apply equally to
21  every Safeway store in every -- in the country.  And the
22  people who can figure that out, your Honor, are the FDA and
23  the USDA.
24          THE COURT:  As I indicated, I have some questions,
25  just out of the box, on the -- certain aspects of this

1   claim.  But the particular focus here is, if I take the
2   position that we need to wait, in some form or another, for
3   the FDA and the USDA to weigh in -- I guess another way to
4   put it is, if they do so and I have a hearing the day after
5   that, I don't have any confidence I'm going to know any more
6   or less for purposes of assessing plaintiffs' claim than I
7   do now.  Because from what I see, they're going to be
8   issuing regulations that are just going to be ships that
9   pass in the night, to use another metaphor, that -- with
10  respect to plaintiffs' claims.  Because they're not going
11  there.  They're not going to the question of the utilization
12  of retailers' databases in this fashion.  They're going to
13  be going to the question of how you, you know, post in the
14  store some notice that a particular food product is subject
15  to a recall.
16          MR. STUBLAREC:  But the simple fact that the FDA and
17  the USDA, pursuant to Congressional mandate, has conducted,
18  not only in the present but in the past, these comprehensive
19  reviews of the issues raised by product recall, and settled
20  on a certain scheme, surely the Court would want to know at
21  least that before weighing in.  If the new regs come out and
22  they don't say a thing about loyalty card programs, at a
23  minimum, it seems to me, that the Court would be almost
24  required to infer from that fact that the FDA and the USDA
25  had studied the issue of how most effectively -- we all want

1	the same thing.
2	        THE COURT: That's the problem. I don't think I can
3	make an inference like that. Because, I mean, I don't know,
4	barring some preemption argument, I don't know what they're
5	considering, why they're considering it, what issue is
6	before them. I mean, the simple fact that they're tasked
7	with the -- with food safety is no different than in any
8	other case. Virtually every case I have, some agency has
9	some responsibility for the area of law that's covered. I
10	just finished -- the case before you was -- essentially
11	involves representations on the box about nutritional
12	issues. Well, that's an area that, you know, the FDA is
13	very involved in. Constantly issuing edicts and the like.
14	If I was to adopt this notion -- they're always coming with
15	something new, I just have to wait for the FDA to issue its
16	next edict on the proper label. I mean, it doesn't work
17	that way. I mean, unless they've occupied the field such
18	that there -- I cannot go there. Preemption is probably the
19	wrong word because that's more used -- federally. Something
20	is preempted from the state -- but you know, I just cannot
21	wade into a field, and that doesn't seem to be the argument
22	you're making. You're just saying we're going to get more
23	information once the FDA does its work. And that will help
24	you, so why don't you wait?
25	        MR. STUBLAREC: But your Honor, that's what the cases

1  say.  That's what the Ninth Circuit has said.  The phrase
2  that appears in the cases under this very heading of primary
3  jurisdiction is, Let the administrative agencies with a
4  Congressional mandate over the issue look at the question,
5  quote, in the first instance.  Case after case says --
6           THE COURT:  In particular, *Clark vs. Time Warner*.
7  But that, you know.
8           MR. STUBLAREC:  And others.  But *Clark* says it in
9  those words.
10          And my point here, your Honor, is I believe the
11 analysis that the Court just articulated would essentially
12 read the primary jurisdiction doctrine out of existence.
13 Because it would be either the area is fully occupied by
14 federal regulation and the courts are expressly instructed
15 to stay out of it so it's preempted.  Or not.  And the
16 doctrine exists.
17          THE COURT:  Yes, but the doctrine would certainly be
18 triggered in the event that you could make a showing to me
19 that under consideration by the FDA was whether or not
20 retailers were going to be obliged to use their databases
21 for purposes of electronically communicating with their --
22 members of any kind of incentive program as to food recalls.
23 Then you'd say the FDA is going to weigh into this field and
24 I should wait to hear at the very least what they have to
25 say.  But that's not what you're showing me.  What you're

1  saying to me is an agency is going to be generally dealing
2  with a very broad subject of product recall, and because
3  they may or may not have some regulation that will be of
4  some relevance, I should wait.  That's effectively what
5  you're saying.
6       MR. STUBLAREC:  I'm not, your Honor, and if I've
7  communicated that, that's not been my intention.
8       The specific issue -- now, we can argue about what
9  the specific issue is -- but in my view, the specific issue
10 raised by this complaint, namely, what is the proper
11 procedure for grocers to follow to give notice of recall?
12 That very issue, not some broad consideration of recalls
13 generally, the very issue of how a grocer should give notice
14 of a recall, that's what's pending before the FDA.  And your
15 Honor, it is absolutely correct, as the Court has noted,
16 that our showing does not put forth anything that would say
17 to the Court that the FDA is specifically considering using
18 loyalty card databases.  But we're not saying it's not,
19 either.  We're early in the public comment period.  The
20 Congress has given the FDA a year to do its work and come
21 out with those regulations.  That year will terminate in
22 January of 2012.  And presumably the public on both sides of
23 this issue -- well, we aren't really adversaries.  Everybody
24 wants to do effective notice.  But consumers are presumably
25 weighing in.  Grocers are weighing in.  Perhaps state

1    agencies are weighing in.
2         The point that we think implicates the primary
3    jurisdiction doctrine, your Honor, is the fact that under
4    *Clark vs. Time Warner*, and the other cases that we've cited
5    to the Court, where an issue has been committed to the
6    regulatory authorities pursuant to a comprehensive scheme,
7    then in the first instance, the Court ought to look -- wait
8    and see what they do. Now, it might happen -- I'm
9    suggesting; I don't know.
10        THE COURT: Okay.
11        MR. STUBLAREC: But it might happen that in February,
12   I might be able to come and show the Court that the
13   proceedings of the FDA did in fact consider this. I don't
14   know. But the doctrine says that the Court shouldn't weigh
15   in while the administrative agencies are doing their work
16   and jump the gun.
17        THE COURT: Okay. Let me hear from plaintiffs, and
18   then I do have to move along.
19        Go ahead, Mr. Gardner.
20        MR. GARDNER: Thank you, your Honor. And I'll follow
21   the prior lawyer's wisdom of not trying to dig myself a
22   hole, because the Court is right. Mr. Stublarec focuses on
23   the concept that recalls are a complex system involving both
24   state and federal agencies. Well, they are. We're not
25   trying to do anything as to recalls. What we're trying to

1  deal with is something that has never been addressed in the
2  past, and that the FSMA is only going to address in passing.
3  FDA, through the requirements of FMSA -- FSMA -- is only
4  going to come up with a laundry list of ways to give general
5  notice, and a retailer can pick any of them.
6         THE COURT: And how do you know -- do we know that's
7  the limit of their charter?
8         MR. GARDNER: Well, I can't cite it off the top of my
9  head -- I can get it to you. The statute says, Here's what
10 the FDA should consider. That does not prevent them from
11 going beyond it. But reality prevents them from requiring
12 individual notice because, although the big stores,
13 including Safeway and all the others who do give individual
14 notice that have club cards or similar things, can --
15 there's a whole lot of stores, particularly the small
16 stores, that do not give individual notice because they
17 can't do it. So the FDA could not mandate that. But all
18 they're going to come up with is a list of ways, and the
19 stores can pick one. It doesn't begin to approach anything
20 mandatory.
21        THE COURT: So your position is that the argument
22 that defendant is suggesting might be available to them --
23 we don't know exactly what the FDA will do, but the argument
24 would be, The FDA has considered this area, and the very
25 fact that they made no requirements with respect to

1  utilization of the database for electronic communication,
2  one can infer from that that they -- that that is not an
3  obligation that a retailer like Safeway has a legal
4  obligation to take on.
5      MR. GARDNER: I don't think that is a valid
6  inference, your Honor, because, one, trying to infer from
7  FDA action is problematic. But two, as I said, if they were
8  to require that, it would be impossible for stores to do.
9  So FDA does reject, in its regulatory process, and has
10 historically, rejected things that will not work.
11     So in this instance, what we're seeking from Safeway
12 by way of injunctive relief is not something that FDA could
13 mandate for every grocery store. And even if it did,
14 Safeway and every other grocery store could pick one of the
15 lesser onerous methods that the statutes set out.
16     It's also important, your Honor, something that
17 Safeway glosses over, which is that we're seeking damages.
18 Even if we can't persuade the Court to give prospective
19 injunctive relief making Safeway step up to the plate as
20 every one of its competitors has, then, under standard
21 consumer law, implied warranty law, these people bought a
22 product that carried with it an unreasonable risk of severe
23 illness or death. Safeway may not have known at the point
24 it sold it to them, but it did sell them food that was later
25 found out to be tainted or from a lot that was tainted.

1   Safeway knew it, Safeway did not want to tell its customers
2   about it.
3        I think the Court is right that, because that was my
4   reaction as well, so therefore the Court must be right, that
5   this is more of a preemption argument.  The reason I would
6   suspect that Safeway isn't making a preemption argument is
7   the case law is heavily against it, because the case law,
8   starting I think with the Florida Limon Avocado growers
9   opinion, about 40 or 50 years ago, has consistently held
10  that state laws and the Food, Drug and Cosmetic Act can
11  exist in tandem, and there is no preemption the FDCA
12  expressly provides for it.  You will not see express
13  preemption in the FSMA or anywhere else in the food and drug
14  law as to notices.
15       Unless the Court has questions, I would want to
16  correct counsel who said I was, assuming you were talking
17  about me, involved in the legislative process.  I wasn't.
18  Folks in my office were heavily involved, but not the
19  lawyers.
20       Thank you, your Honor.
21       THE COURT:  I'm going to take the matter under
22  submission.  I do need to move on to the next matter.  I'll
23  give you an order.  I'll go back and take a look and give
24  you an order.  Thank you.
25       MR. GARDNER:  Thank you.

1             MR. STUBLAREC:  Thank you very much, your Honor.
2             Procedural point?
3             THE COURT:  Yes?
4             MR. STUBLAREC:  I'm not trying to reargue the matter.
5    We're on for our first case management conference July 14.
6    Our deadline to meet and confer I believe is the 23rd of
7    this month.  This is a situation in which if the Court is
8    going to dismiss or stay, we would like to avoid the expense
9    of that process.  I don't know what the Court's intentions
10   are about timing, but I thought I should at least alert the
11   Court that that's the schedule, and if we're going to be
12   here on the 14th --
13            THE COURT:  I appreciate you advising me of that.
14   I'll -- at the moment, it remains in place.  But I will take
15   that into account when I do my conference with my fine staff
16   about timing on certain things.  We'll -- I will make a note
17   that you have that coming up, and I hear what you're saying,
18   depending upon how the case comes out.
19            MR. STUBLAREC:  If we could have a little more time
20   in light of --
21            THE COURT:  Why don't I bump the case management
22   conference about three weeks at this point?  Is that fine
23   with you?  And that will give you time to take a look at
24   this.
25            MR. GARDNER:  Your Honor, we've been trying to meet

```
```
1  and confer with them for several weeks now.  They don't want
2  to make discovery.  We're not going to insist on that, but
3  we would like to do the work necessary to move as scheduled
4  to the case management conference.  They don't want to make
5  discovery.  To be against my own interests, honest, I don't
6  know that they should.  We'll stipulate they don't have to
7  make discovery until we get a ruling from the court on the
8  motion to dismiss.  But I would like to keep this --
9             THE COURT:  It's not that much of a burden to meet
10 and confer and putting the together a joint CMC statement.
11 The discovery is more of the issue.  And if they're willing
12 to await my order, then why don't we leave the CMC in place?
13            MR. GARDNER:  Thank you.
14            MR. STUBLAREC:  Fair enough, your Honor.
15            THE COURT:  Thank you.
16            (Adjourned)
17                              oOo
18                     CERTIFICATE OF REPORTER
19
20     I, Connie Kuhl, Official Reporter for the United
   States Court, Northern District of California, hereby certify
   that the foregoing proceedings were reported by me, a
21 certified shorthand reporter, and were thereafter transcribed
   under my direction into written form.
22
23     S://_____
24              Connie Kuhl, RMR, CRR
             Thursday, January 31, 2012
25