JESSE F. RUIZ [SBN. 77984]
jfr@robinsonwood.com
GABRIEL G. GREGG [SBN. 187333]
ggg@robinsonwood.com
ROBINSON & WOOD, INC.
227 N 1st Street
San Jose, California  95113
Telephone:   (408) 298-7120
Facsimile:    (408) 298-0477

*Attorneys for Defendant SAFEWAY INC.*

Stephen H.  Gardner (*Pro Hac Vice*)
SGardner@cspinet.org
Center for Science in the Public Interest
5646 Milton Street, Suite 714
Dallas, TX  75206
Telephone: (214) 827-2774
Facsimile:  (214) 827-2787

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEE HENSLEY-MACLEAN and JENNIFER ROSEN, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>SAFEWAY INC. and DOES ONE through TWENTY, inclusive,<br><br>        Defendants. | Case No. 3:11-CV-01230 RS<br><br>**CLASS ACTION**<br><br> ORDER<br>**STIPULATION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND REVISE THE SCHEDULING ORDER**<br><br>Judge:   Hon. Richard Seeborg<br>Dept.:   3 - 17th floor |

Pursuant to Civil Local Rule 6-2, the parties respectfully submit this Stipulation for Leave to File First Amended Complaint and Revise the Scheduling Order.

As set forth in the accompanying Declaration of Craig Briskin, an unanticipated conflict has arisen that requires one of the plaintiffs, Jennifer Rosen, to withdraw from the case, substituting another plaintiff in her stead.  As a result of this conflict, Plaintiff meets the standard

1    under Federal Rule of Civil Procedure 15(a) and 16(b) to modify the scheduling order and file the
2    amended complaint.

3          After the original Complaint was filed, Rosen's uncle Gary Rogers became a member of
4    Safeway's Board of Directors.  Briskin Declaration, ¶ 3.  None of the parties realized that this
5    unforeseeable coincidence had occurred until several months ago.  Briskin Declaration, ¶ 6.
6    Rosen's continued involvement as plaintiff is causing strain in her family.  Briskin Declaration, ¶
7    4.  Rosen has therefore decided that the best course of action is for her to withdraw as plaintiff to
8    preserve family harmony.  Briskin Declaration, ¶ 4.

9          The attached First Amended Complaint substitutes a new plaintiff, Sara Duncan, for
10   Rosen, but is otherwise the same as the current Complaint (attached hereto as Exhibit A).

11         As a result of the Amended Complaint, the parties believe that the current schedule for
12   discovery and class certification needs to be amended.  The parties are in the process of meeting
13   and conferring regarding a proposed amended schedule to the relevant dates affected by the filing
14   of the Amended Complaint.

15         Accordingly, the parties stipulate and request that this Court:

16      1.   Approve the filing of the attached Amended Complaint;

17      2.   Vacate the current deadlines for opposing and replying to Plaintiffs' Motion for Class
18           Certification;

19      3.   Permit the parties to file a proposed schedule modifying the relevant dates regarding
20           discovery and class certification within 10 days from this Court's Order granting leave
21           to file the Amended Complaint.

22         **Dated:** April 5, 2013 April 5, 13

23   Respectfully submitted,

24   **Rukin, Hyland, Doria & Tindall**                    **Robinson & Wood, Inc.**

25

26   ___/S/_____                    ___/S/_____

27   Whitney Stark                                             Jesse F. Ruiz
     Rukin Hyland Doria & Tindall LLP                 Gabriel G. Gregg
28   100 Pine Street, Suite 2150                          227 N. 1st Street

STIPULATION FOR LEAVE TO FILE AMENDED COMPLAINT AND REVISE THE SCHEDULING ORDER

San Francisco, CA  94111                    San Jose, CA  95113
Telephone: (415) 421-1800                   Telephone: (408) 298-7120
Facsimile: (415) 421-1700                   Facsimile:  (408) 298-0477


Center for Science in the Public Interest
Stephen Gardner
Amanda Howell
5646 Milton Street, Suite 714
Dallas, TX  85206
Telephone: (214) 827-2774
Facsimile:  (214) 827-2787


Consumer Law Practice of Daniel T. LeBel
Daniel T. LeBel
601 Van Ness Avenue
Opera Plaza, Suite 2080
San Francisco, CA  94102

        -and-

Steven A. Skalet
Craig L. Briskin
Mehri & Skalet, PLLC
1250 Connecticut Ave., NW, Suite 300
Washington, DC  20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997


        -and-

James C. Sturdevant
The Sturdevant Law Firm
354 Pine Street, Fourth Floor
San Francisco, CA  94104
Telephone: (415) 477-2410
Facsimile: (415) 477-2420


* * * * *

**PURSUANT TO STIPULATION IT IS SO ORDERED:**


Dated: April _8_, 2013

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

**STIPULATION FOR LEAVE TO FILE AMENDED COMPLAINT AND REVISE THE SCHEDULING ORDER**

**ATTESTATION CLAUSE**

I, Whitney Stark, hereby attest in accordance with Civil L.R. 5-1(i)(3) that Gabriel G. Gregg, counsel for Defendant Safeway , provided his concurrence with the electronic filing of the foregoing document entitled STIPULATION RE REVISED JOINT PROPOSED SCHEDULE FOR CLASS CERTIFICATION.

Dated: April 5, 2013                          RUKIN HYLAND DORIA AND TINDALL

                                              By: _____
                                                  Whitney Stark

# EXHIBIT A

DANIEL T. LEBEL, SBN 246169
**CONSUMER LAW PRACTICE OF DANIEL T. LEBEL**
601 Van Ness Avenue,
Opera Plaza, Suite 2080
San Francisco, CA 94102
danlebel@consumerlawpractice.com
Tel: (415) 513-1414
Fax: (877) 563-7848

STEPHEN GARDNER
**CENTER FOR SCIENCE IN THE PUBLIC INTEREST**
5646 Milton Street, Suite 211
Dallas, Texas 75206
Lead counsel for Plaintiffs

*Attorneys for Plaintiffs and the proposed class*
(additional counsel listed on signature page)

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEE HENSLEY-MACLEAN and SARA DUNCAN, on behalf of themselves and those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SAFEWAY, INC., <br><br> Defendant`. | Case No.: 4:11-CV-01230-RS <br><br> **CLASS ACTION COMPLAINT** <br><br> 1. **CONSUMERS LEGAL REMEDIES ACT;** <br><br> 2. **UNFAIR & DECEPTIVE BUSINESS PRACTICES (CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.*);** <br><br> 3. **BREACH OF DUTY TO WARN;** <br><br> 4. **BREACH OF IMPLIED WARRANTY; AND** <br><br> 5. **MONEY HAD AND RECEIVED** <br><br> **DEMAND FOR JURY TRIAL** |

## **INTRODUCTORY STATEMENT**

1.      Plaintiffs Dee Hensley-Maclean and Sara Duncan ("Plaintiffs"), individually and on behalf of those similarly situated, bring this lawsuit because Defendant Safeway, Inc. ("Safeway") fails to provide adequate notice of recalls of dangerous food items to its Club Card customers ("Customers") who have purchased Recalled Products.[1]

2.      The Food and Drug Administration ("FDA") and the United States Department of Agriculture ("USDA") use three classes of recall: Class 1, Class 2, and Class 3. A Class 1 recall of a product occurs when there is a reasonable probability that use of the product will cause serious, adverse health consequences or death.[2] In this action, "Recalled Products" are those subject to a Class 1 recall.

3.      Plaintiffs and those similarly situated suffered damage in that they paid for foods that could cause serious, adverse health consequences or death when consumed. Safeway failed and continues to fail to adequately inform its Customers that they are at risk of serious, adverse health consequences or death if they consume Recalled Products.

---

[1] The USDA represents the classes by the Roman numerals I, II, and III. This Complaint refers to both FDA Class 1 recalls and USDA Class I recalls as "Class 1 Recalls" and to products subject to Class 1 Recalls as "Recalled Products" or "Products."

The FDA and the USDA have separate definitions of recall class, but both agencies follow the same general rule of Class 1/I being the most dangerous, Class 2/II being potentially dangerous, and Class 3/III being the least dangerous. The FDA's guidelines define Class 1 recalls as "Dangerous or defective products that predictably could cause serious health problems or death." FDA CONSUMER HEALTH INFO., U.S. FOOD AND DRUG ADMIN., FDA 101: PRODUCT RECALLS 2 (Oct. 2009). *www.fda.gov/downloads/ForConsumers/ConsumerUpdates/UCM143332.pdf* (last visited Jan. 28, 2011).

The USDA's guidelines define Class I recalls as "[involving] a health hazard situation in which there is a *reasonable* probability that eating the food will cause health problems or death." Food Safety and Inspection Serv., U.S. Dep't of Agric., FSIS Food Recalls. *www.fsis.usda.gov/factsheets/FSIS_Food_Recalls/index.asp* (last visited Jan. 28, 2011).

[2] *www.fsis.usda.gov/OPPDE/rdad/FSISDirectives/8080.1Rev5.pdf* (last visited Jan. 28, 2011). This is USDA's wording. FDA describes a Class 1 recall similarly: "Dangerous or defective products that predictably could cause serious health problems or death." *www.fda.gov/downloads/ForConsumers/ConsumerUpdates/UCM143332.pdf* (last visited Jan. 28, 2011).

4.      Plaintiffs seek damages limited to the amount that they and those similarly situated paid for Recalled Products. Plaintiffs also seek declaratory and injunctive relief related to Safeway's failure to inform Customers of their purchase of Recalled Products and their right to a refund. This is not an action for personal injury or bodily harm.

5.      When Safeway learns that Recalled Products have been sold in its stores, it has a duty to disclose to Customers that they face serious health risks or even death if they eat the Recalled Products. Safeway chooses not to notify its Customers who purchased Recalled Products, thereby putting them at risk of substantial injury or death.

6.      The form of notice and refund sought in this action will cost Safeway nothing, because Safeway's suppliers agree to reimburse all costs associated with notice and refunds.

7.      Plaintiffs seek to recover economic damages for themselves and for the members of the class, in the form of refunds of all purchases of Recalled Products for which Safeway has Club Card or other records showing the purchaser and the identity of the Recalled Product. Plaintiffs would never have knowingly bought a Recalled Product, because it has no economic value to them. In fact, a Recalled Product is worth less than zero because it is not safe for human consumption.

8.      In addition, Plaintiffs seek equitable relief to protect their own health and welfare, as well as the health and welfare of those similarly situated, by compelling Safeway to provide notice of Recalled Products to Customers. Plaintiffs ask the Court (1) to declare that Safeway's practice of selling dangerous Products, and then failing to notify Club Card members of Recalled Products and issue them a refund, is an unfair and deceptive act and practice pursuant to the Consumer Legal Remedies Act and California's Unfair Competition Law, violates Safeway's duty warn its Customers, and is a breach of the warranty of merchantability; and (2) to compel Safeway to use the customer contact information and purchase history that it routinely collects to inform Customers of Recalled Products, and issue refunds of the purchase price of the Products. To effectuate this recall, Safeway should use, to the fullest extent possible, automated register printouts, telephone calls, letters, e-mails and text messaging, and prominent statements in

Safeway stores on the home page (or another equally noticeable location) of its website, Safeway.com.

## THE PARTIES

### A.    Plaintiffs

9.    Plaintiff Dee Hensley-Maclean is a resident of Ravalli County, Montana. Hensley-Maclean regularly shops at Safeway in Hamilton, Montana, and is a regular user of Safeway's Club Card Program. Hensley-Maclean purchased Recalled Products (snack foods containing peanut butter) from Safeway during the Class Period (defined below).

10.    Plaintiff Sara Duncan is a resident of Walnut Creek, California. Duncan regularly shops at Safeway in Walnut Creek, and is a regular user of Safeway's Club Card Program. Duncan purchased Recalled Products (eggs) during the Class Period (defined below).

### B.    Defendant

11.    Safeway, Inc. is organized and incorporated under the laws of the State of Delaware, with its principal place of business at 5918 Stoneridge Mall Road, Pleasanton, California, 94588-3229.

12.    Safeway operates 1,739 stores throughout the United States, including over 500 stores in California, its home state, and 12 stores in Montana. All Safeway stores promote the same Club Card program benefits to consumers, and collect purchase information at the point of sale from participating Customers.

13.    The true names and capacities of Defendants sued as Does 1 through 20 are unknown to Plaintiffs at this time.  Plaintiffs therefore sue said Defendants by such fictitious names. Plaintiffs will amend this Complaint to allege the true names and capacities of Does 1 through 20 when ascertained.  Plaintiff is informed and believes, and based thereon alleges, that each Defendant is jointly and severally responsible in some manner for the damages alleged herein.

/ / /

**JURISDICTION AND VENUE**

14.     This Court has jurisdiction over this action pursuant to § 410.10 of the California Code of Civil Procedure. Jurisdiction is also proper under California Civil Code § 17200 *et seq.*

15.     Venue is appropriate in the County of Alameda pursuant to California Civil Code § 1780(d) and California Code of Civil Procedure § 395, because Safeway's principal place of business is in this county. Plaintiff Duncan is concurrently filing the Declaration as to Venue required by California Civil Code § 1780(d).

16.     This action was removed from California Superior Court by Safeway which alleges this Court has jurisdiction pursuant to the "Class Action Fairness Act," 28 U.S.C. §§ 1332(d), 1435 ("CAFA"). At least one member of the proposed class is a citizen of a state other  than where Safeway is incorporated and headquartered. The proposed class consists of more than 100 members.  Further, Safeway has alleged that the amount in controversy exceeds $5 million taking into account all damages and equitable relief on behalf of the proposed class, and excluding interest and costs.

**FACTUAL ALLEGATIONS**

A.      **Class 1 Recalls: Food Safety In Crisis**

17.     Food safety is high on the national agenda, particularly in light of the many recent large-scale recalls. Following highly publicized recalls of spinach, peanut products, and other foods over the last several years, and the more recent massive, nationwide egg recall, there have been increasing calls for government and industry action to improve the safety of the American food supply.[3]

18.     In response to these concerns, President Obama has declared that food safety is an important policy priority for his administration, stating that the current level of food safety "is a hazard to public health. It is unacceptable."[4]

---

[3] Hallman, W. K. & Cuite, C. L. (2010). Food Recalls and the American Public: Improving Communications. (Publication number RR-0310-020). p.1, New Brunswick, New Jersey: Rutgers, The State University of New Jersey, Food Policy Institute.

[4] *http://www.whitehouse.gov/the_press_office/Weekly-Address-President-Barack-Obama-Announces-Key-FDA-Appointments-and-Tougher-F* (last visited Jan. 28, 2011).

19.     On January 4, 2011, President Obama signed into law the historic Food Safety Modernization Act which requires food manufacturers and farmers to implement plans aimed at preventing contaminated products, improves surveillance of outbreaks of food borne illnesses, and gives the U.S. Food and Drug Administration authority to recall potentially contaminated food from the marketplace. The requirements of the Food Safety Modernization Act will aid in the reduction of the number of outbreaks of foodborne illnesses, but the highest level of food safety requires that all players in the food production and distribution chain do their part.

20.     In addition, California maintains a strong public policy to promote food safety.  The policy is embodied in statutes and regulations such as the Sherman Food, Drug, and Cosmetic Act.

21.     Approximately 48 million foodborne illnesses occur each year in the United States, causing more than 128,000 hospitalizations, and 3,000 deaths.[5]

22.     Every year, approximately 40,000 cases of salmonellosis are reported in the United States.[6] Because many milder cases are not diagnosed or reported, the actual number of infections may be thirty or more times greater.[7]

23.     There are at least 70,000 E. coli O157 infections each year in the United States, not counting the many more that go unidentified and unreported.[8]

24.     Recalled Products are health hazards and are unfit for human consumption because there is a reasonable probability that the use of the Product will cause serious, adverse health consequences or death.

25.     Because a Recalled Product predictably could cause serious health problems or death, the Product is both "adulterated" and "misbranded" in violation of the Federal Food, Drug and Cosmetic Act, and California's Sherman Law, California Health and Safety Code § 110660.

---

[5] *www.cdc.gov/foodborneburden/2011-foodborne-estimates.html* (last visited Jan. 28,2011).

[6] *www.cdc.gov/nczved/divisions/dfbmd/diseases/salmonellosis/#how_common* (last visited Jan. 28, 2011).

[7] *Id.*

[8] *www.cdc.gov/nczved/divisions/dfbmd/diseases/ecoli_o157h7/index.html#how_common* (last visited Jan. 28, 2011).

26.     Alerting consumers to the hazards of Recalled Products they purchased is key to preventing serious illness or death from use of the products.

27.     Inadequate notice of food recalls causes unnecessary sickness, suffering, and death when a Recalled Product is consumed by people who do not hear about the recall or cannot identify the Products.[9]

28.     The longer that Recalled Products remain on a customer's shelf, the greater the likelihood that they will be consumed and cause illness or injury.

29.     The success of food recalls depends on getting individual consumers to take appropriate actions.[10] The first step in getting consumers to take appropriate action with regard to a Recalled Product is alerting them to the fact that a recall exists for a product they purchased.

30.     It is also important to issue prompt refunds to consumers for any Recalled Product, to avoid any need to use the Product, despite the Recall, due to economic distress or lack of transportation to return the Product. This problem disproportionately affects lower-income consumers.

31.     Providing personalized recall messages to consumers regarding their previous purchases of Recalled Products and implementing an immediate credit or refund for the sale are the best ways to make sure consumers know about the risk of consuming Recalled Products and will not gamble on eating them despite the Recall.[11]

32.     Supermarkets and club stores account for approximately 80% of food sold in this country.[12] Thus, large chain grocery stores (like Safeway) are usually the point of purchase of Recalled Products. From the information they collect under their club card programs, they have the ability to quickly and effectively identify and alert consumers that they have purchased a Recalled Product.

---

[9] Hallman & Cuite, at 2.

[10] Hallman & Cuite, at 3.

[11] Hallman & Cuite, at 14.

[12] *www.ers.usda.gov/Briefing/FoodMarketingSystem/foodretailing.htm* (last visited Jan. 28, 2011).

AMENDED CLASS ACTION COMPLAINT

### B.      Safeway's Club Card Customer Loyalty Program

33.      Safeway's Club Card membership program encourages and entices Customers to return to Safeway through special promotions, pricing, and benefits. Online, Safeway touts its Club Card membership as providing "exclusive savings all across the store AND anytime [Customers] shop online at Safeway.com."

34.      Consumers join Safeway's Club Card program by completing an application in the store or online. The application asks for the consumer's name, address, telephone number, and e-mail address. Safeway stores this contact information in a centralized database, and monitors and records Customers' subsequent purchases made using the Club Card.

35.      At the cash register, Customers or cashiers enter Club Card information. Safeway thereby captures each Customer's purchasing history.

36.      Safeway requires Customers to use the Club Card to receive discounted prices on their purchases thus ensuring a high level of compliance by Customers.

37.      Safeway analyzes the recorded information and uses it to provide Customers with special offers, promotions, and coupons tailored to each Customer's purchasing habits. These special offers, promotions, and coupons are instrumental in making Club Card members repeat customers.

38.      Safeway can identify which Customers purchased Recalled Products, and warn them that consuming the Products puts them at risk of a serious illness or death. Safeway can also easily credit Customers for the cost of the Product if it was purchased with a credit or debit card.

39.      Many of Safeway's competitors already use their own customer data to notify their customers of Recalled Products and to offer refunds, reducing the risk of harm to their own customers. Ralphs (owned by Kroger), Walmart, Sam's Club, Costco, Giant Food Supermarkets, Harris Teeter Food Markets, Wegmans Food Markets, and ShopRite Supermarkets (among others) all routinely issue food safety alerts directly to customers using a variety of methods.

40.      Safeway has engaged in unfair and deceptive acts and practices by knowingly failing to inform its Customers that that they purchased Recalled Products and by failing to refund the cost of the Product.

**C.      Safeway's Deliberate Disregard for Customers' Safety**

41.      As the retailer of dangerous Recalled Products, Safeway is responsible for the economic injury caused by its actions.[13]

42.      Consumer injury occurs in three ways, when (1) a Customer purchases a Recalled Product, (2) Safeway fails to inform the Customer that she has purchased a Recalled Product in a meaningful manner, and (3) Safeway fails to refund the cost of the Recalled Product to easily ascertainable Customers.

43.      When a wholesaler or other supplier sells food to Safeway that is later found to be a Recalled Product, the supplier is responsible for all costs of the recall, including the cost of direct contacts with Customers and appropriate refunds as sought by this lawsuit.[14]

44.      Thus, the cost to Safeway of notifying and making refunds to Customers is zero.

45.      Safeway entices consumers to join its Club Card Program in exchange for discounts, then uses purchase information collected by the Club Card program to encourage repeat visits to Safeway stores and to boost sales through special marketing initiatives. But Safeway inexplicably refuses to use the very same customer contact information to notify Customers and make refunds of Recalled Products, though the cost to Safeway is zero.

**D.      Facts as to Plaintiff Hensley-Maclean**

46.      Hensley-Maclean shops at her local Safeway store frequently, because she is a

---

[13]  Safeway is also responsible for any physical injury caused by Recalled Products, but this Complaint does not seek any form of monetary compensation for physical injury resulting from persons physically injured by Recalled Products sold to them by Safeway.

[14]  *See* Safeway, Inc. Continuing Commodity Guaranty And Indemnity Agreement, Section IX: Recalls and Tainted Products: "If Goods, because of a condition which existed at the time of delivery (or which results from such condition), are the subject of a recall (or safety notice) initiated by [Safeway], Seller, or a government or consumer protection agency, *Seller shall be responsible for all reasonable costs and expenses associated with the recall or notice and shall reimburse [Safeway] for all reasonable costs and expenses incurred by [Safeway] in recalling, publishing notices about, shipping and/or destroying such Goods* (and, where applicable, any products with which such Goods have been packaged, consolidated or commingled) *at [Safeway's] net landed cost therefor, including refunds to customers.* (Emphasis Supplied).

*http://suppliers.safeway.com/usa/forms/CCG_Revised_cln.pdf* (Last visited Jan. 28, 2011).

AMENDED CLASS ACTION COMPLAINT

mother to two growing teens: a son, age 13, and a daughter, age 16. She regularly uses a Club Card when she shops there.

47.    In 2008, Hensley-Maclean purchased peanut butter crackers and Nutter Butter Sandwich Cookies from Safeway. These were Recalled Products. She only learned that Safeway had sold her Recalled Products by chance while watching a local news program.

48.    Safeway did not notify Hensley-Maclean about the Class 1 recall of the Products, or about her right to a refund of the purchase price, despite the fact that Safeway was well aware of the Class 1 recall, had knowledge of Hensley-Maclean's purchase of the Recalled Products, and had linked those purchases to the Club Card.

49.    Hensley-Maclean also purchased other snack foods containing peanut butter at her local Costco store. Costco uses a card system similar to that used by Safeway. Unlike Safeway, Costco contacted Hensley-Maclean directly, via mail, to alert her to the fact that she had purchased Recalled Products from Costco, and to notify her that she was entitled to return the Recalled Products to Costco for a full refund of the purchase price.

50.    Upon learning that the peanut butter crackers and Nutter Butter Sandwich Cookies were dangerous and defective and subject to a Class 1 recall, Hensley-Maclean immediately disposed of the products. She would never have purchased the products if she had known they were Recalled Products. Because they were a danger to her and her family, they were no longer fit for consumption, and therefore had no monetary or other value to her.

**E.      Facts as to Plaintiff Duncan**

51.    Duncan shops at her local Safeway store, located at 1972 Tice Valley Boulevard in Walnut Creek. She regularly uses a Club Card when she shops there.

52.    In 2010, Duncan purchased eggs at Safeway. Duncan consumed some of the eggs before she learned that they had been recalled and Duncan was hospitalized for Salmonellosis. These were Recalled Products. Duncan only learned that Safeway had sold her Recalled Products after she was infected with Salmonella bacteria through news coverage of this proposed class action.

53.     Safeway did not notify Duncan about the Class 1 recall from Safeway, or about her right to a refund of the purchase price, despite the fact that Safeway was well aware of the Class 1 recall, had knowledge of Duncan's purchase of Recalled Products, and had linked those purchases to the Club Card.

54.     Duncan would never have purchased or consumed the eggs if she had known they were Recalled Products because they were a danger to her, no longer fit for consumption, and therefore had no monetary or other value to her.

## CLASS ALLEGATIONS

55.     Plaintiffs seek to certify a nationwide class of: All Customers who bought Recalled Products, and whom Safeway did not advise that they had bought Recalled Products, for a period beginning four years prior to the date this complaint is filed until the date of class certification ("Class Period").

56.     Safeway has acted (by selling Recalled Products) and refused to act (by failing to notify and refund Customers who had purchased Recalled Products) on grounds generally applicable to the class.

57.     The disposition of Plaintiffs' claims in a class action will benefit both the parties and the Court, because Plaintiffs' claims are identical to those of the proposed class and claims and defenses by the representative party are identical.

58.     The class is composed of hundreds of thousands of persons. Safeway has sold and continues to sell to class members hundreds of thousands of food products daily in California and throughout the United States. Thus the class is so numerous as to make joinder impracticable, if not impossible.

59.     There are questions of fact and law that are common to all members of the class, including:

      a.     Whether Safeway's representations regarding the safety of foods it sold were false and misleading and unlawfully, unfairly, fraudulently, or unconscionably deceived class members into believing that the foods sold at Safeway are characteristically safe for consumption and of a particular quality when those foods were not;

      b.     Whether the marketing of Safeway's stores using the Club Card program to record class members' contact information and track purchases in order to engage in targeted

marketing to boost its sales and revenue, without using that same information for the benefit of the health and welfare of class members is unfair, fraudulent, and unconscionable;

c.      Whether Safeway negligently failed to adequately notify class members that they purchased a Recalled Product, negligently failed to advise them not to consume the Recalled Product for fear of a serious health hazard or death, and negligently failed to offer a full refund of the amount paid for the Recalled Product;

d.      Whether Safeway breached the warranty of merchantability implied at the time of sale in that class members did not receive goods that were beneficial or that had the beneficial characteristics represented and thus, the goods were not merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, advertised, packaged, labeled or sold; and

e.      Whether the class has been damaged and, if so, the appropriate measure of damages, including the nature of the equitable relief to which the class is entitled.

60.      These common issues of fact and law predominate over any arguable individualized issues.

61.      Plaintiffs' claims are typical of the claims of the other members of the class because Plaintiffs' and all of the class members' damages arise from and were caused by purchasing Recalled Products. As a result, the facts and the law regarding Safeway's alleged wrongful conduct are identical for Plaintiffs and all of the class members.

62.      Plaintiffs will fairly and adequately protect the interests of the members of the class, and Plaintiffs have no interests that are contrary to or in conflict with those of the class they seek to represent. Plaintiffs have retained competent counsel experienced in class action litigation to prosecute this action vigorously.

63.      The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the party opposing the class and would lead to repetitious trials of the numerous common questions of facts and law.

64.      Plaintiffs are not aware of any difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

65.      The monetary value of individual claims is limited to refunds for Recalled Products

and is minuscule in relation to the costs of an individual suit. A class action is the only proceeding in which class members can, as a practical matter, recover.

66.     As a result a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Proper and sufficient notice of this action may be provided to the class members using Club Card information and any other customer contact information in Safeway's possession or control.

67.     Plaintiffs and the members of the class have suffered irreparable harm and damages as a result of Safeway's wrongful conduct as alleged herein. Absent a representative action, Plaintiffs and the members of the class will continue to suffer losses, thereby allowing these violations of law to proceed without remedy.

**FIRST CAUSE OF ACTION FOR RESTITUTION AND INJUNCTIVE RELIEF**
**(Violation of the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*)**

68.     Safeway's representations regarding the safety of foods it sold unlawfully, unfairly, and unconscionably deceived Customers into believing that the foods sold at Safeway are safe for consumption and of a particular quality when those foods were not. Safeway's practices as alleged herein violate the California Legal Remedies Act in that Safeway:

(a) "represent[ed] that goods . . . have . . . characteristics, ingredients, uses, benefits, or quantities which they do not have;" (§ 1770(a)(5)) and

(b) "represent[ed] that goods or services are of a particular standard, quality, or grade. . . if they are of another." (§ 1770(a)(7)).

69.     As a direct result of Safeway's unfair and deceptive business practices, Rosen and those California residents similarly situated have been, and continue to suffer injuries.

70.     Plaintiff has provided notice to Safeway of its violations of the Consumers Legal Remedies Act concurrent with filing of this Complaint.

71.     Pursuant to California Civil Code § 1780, Rosen and those similarly situated are entitled to restitution of the purchase price of Recalled Products sold, are entitled to obtain an order requiring Safeway to inform Customers — by automated register printouts, telephone calls, letters, e-mails and text messaging , and prominent statements in Safeway stores on the home page

(or another equally noticeable location) of its website, Safeway.com — that Safeway sold Customers Recalled Products and that Customers will receive or are entitled to receive a refund of the purchase price of Recalled Products, and to recover her reasonable attorneys' fees and costs.

72.     Rosen, on behalf of those similarly situated, seeks restitution and injunctive relief pursuant to California Civil Code § 1780. The Consumers Legal Remedies Act, Civil Code § 1750 *et seq.*, is designed to protect consumers against unfair and deceptive business practices. It applies to Safeway's conduct because it covers transactions that are intended to result or that result in the sale or lease of goods and services to consumers.

## SECOND CAUSE OF ACTION FOR EQUITABLE RELIEF
### (Violation of the Unfair Competition Law,
### California Business and Professions Code § 17200 *et seq.*)

73.     Under the Unfair Competition Law ("UCL"), unfair competition includes any "unlawful," "unfair," or "fraudulent" business act or practice.[15] The Law authorizes equitable relief for violations.[16]

74.     Safeway's sale of Recalled Products is a business practice covered by the UCL. At all relevant times, Safeway acted, and continues to act, as alleged herein.

75.     Plaintiffs, individually and on behalf of those similarly situated, seek equitable relief pursuant to the UCL, California Business and Professions Code § 17200 *et seq.*, requiring Safeway to inform Customers — by automated register printouts, telephone calls, letters, e-mails and text messaging, and prominent statements in Safeway stores on the home page (or another equally noticeable location) of its website, Safeway.com — that Safeway sold the Customers products subject to Class 1 recalls.

76.     Safeway's course of conduct with respect to Recalled Products — selling Recalled Products; failing to advise its Customers not to eat any Recalled Products; and failing to offer refunds for the Recalled Products — is deceptive, unfair, and unconscionable.

---

[15] Cal. Bus. & Prof. Code § 17200 *et seq.*
[16] *Id.* § 17203.

77.     As a result of Safeway's unfair and deceptive business practices, Plaintiffs and class members have suffered damage and lost money or property in that they paid for adulterated and unsafe food products that were not as represented and suffered the risk of serious illness or death due to Safeway's failure to adequately notify Customers of Class 1 recalls.

78.     Plaintiffs seek both restitution in the form of refunds and an injunction to force Safeway to notify its Customers when it sells Recalled Products in the future.

## THIRD CAUSE OF ACTION
### (Breach of Duty to Warn)

79.     As a seller of foods, Safeway has a duty to Plaintiffs and to those similarly situated to notify them that they have purchased a Recalled Product, to advise them not to consume the Product, and to offer them a full refund of the amount paid for the Recalled Product.

80.     Safeway knows or reasonably should know of Class 1 recalls of foods it sells, and knows that consumption of Recalled Products can result in serious illness or death.

81.     Without receiving notice of Class 1 recalls, Customers are unaware of the danger they face from Recalled Products they have purchased from Safeway.

82.     Safeway has a duty to provide a warning after the time of sale of any Recalled Product, because: (1) Safeway knew or reasonably should have known that the product poses a substantial risk of harm to persons or property; (2) its Customers can be identified and can reasonably be assumed to be unaware of the risk of harm; (3) a warning can be effectively communicated to and acted on by its Customers; and (4) the risk of harm is sufficiently great to justify the burden of providing a warning.

83.     Safeway breached its duty to Plaintiffs and to those similarly situated by failing to advise its Customers not to eat any Recalled Products and by failing to credit the amount paid for the product if possible or, in the case of cash purchases, offer a refund.

84.     As a direct and proximate cause of Safeway's failure to notify Plaintiffs and those similarly situated that they had purchased Recalled Products from Safeway, Plaintiffs and those similarly situated were exposed to the risk of serious illness or death.

85.     As a direct and proximate result of Defendant's misconduct as set forth above, Defendant has been unjustly enriched.  Defendant should not be permitted to keep sums as a result of its unjust actions.

86.     Plaintiffs and those similarly situated have been and will continue to be harmed by Safeway's failure to notify them of their purchase of Recalled Products, and of their right to a credit or refund of the purchase price of Recalled Products.

**FOURTH CAUSE OF ACTION**
**(Breach of Implied Warranty of Merchantability)**

87.     Plaintiffs and other class members purchased foods from Safeway, which Safeway promoted, marketed, advertised, packaged and labeled as being fit for consumption. Safeway impliedly warranted that the food products it sold would be merchantable and fit for the ordinary purposes for which such goods are used.

88.     Plaintiffs and those similarly situated purchased foods from Safeway, relying on Safeway's representations that the foods it sold were fit for consumption when, in fact, they were not fit for consumption in that they were tainted with Salmonella or other bacteria.

89.      Safeway breached the warranties implied at the time of sale in that Plaintiffs and those similarly situated did not receive goods that were fit for consumption. Accordingly, the goods were not merchantable as fit for the ordinary purposes for which such goods are used, or as promoted, marketed, advertised, packaged, labeled or sold.

90.     As a proximate result of these breaches of warranty by Safeway, Plaintiffs and those similarly situated have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that were not fit for consumption and did not receive a refund for the purchase price. They were deprived of the benefit of their bargain and spent money on products at Safeway that did not have any value, had less value than warranted, or that they would not have purchased and used had they known the true facts about them – the health hazards associated with consumption.

/ / /

/ / /

## FIFTH CAUSE OF ACTION
### (Money Had and Received)

91.     Safeway received money belonging to Plaintiffs when it sold them Recalled Products. Safeway benefited from the receipt of their money and retained it. Safeway is obligated to make restitution to Plaintiffs for their purchases of Recalled Products.

92.     Safeway received money belonging to the other class members when it sold them Recalled Products. Safeway benefited from receipt of their money and retained it. Safeway is obligated to make restitution to the class members for their purchases of Recalled Products.

## PRAYER FOR RELIEF

THEREFORE, Plaintiffs pray that the Court:

1.     Certify this matter as a class action with the class defined as set forth above, appoint Plaintiffs as representatives of the Class, and appoint their attorneys as Class Counsel;

2.     Declare that Safeway's practice of choosing not to notify Customers who have purchased Recalled Products and issue refunds or credits for the purchase price of those products violates the Consumer Legal Remedies Act, Unfair Competition Law, and other causes of action pleaded herein;

3.     Preliminarily and permanently order Safeway to (1) post a readily accessible and visible warning online at Safeway.com; (2) post signs in the stores that sold Recalled Products; and (3) to contact each Customer — by telephone, letter, and (when possible) e-mail and text messaging — to advise them not to consume the product and credit the amount paid for the product if possible or, in the case of cash purchases, offer a refund;

4.     Award monetary damages to Customers who did not receive a refund or credit for Recalled Products, plus any available statutory or punitive damages, costs and attorney's fees, in an amount to be determined at trial.

5.      Enter an order for restitution and disgorgement of all profits from the sale of Recalled Products;

6.     Award Plaintiffs and those similarly situated, reasonable attorney's fees and costs of suit; and

7.     Award Plaintiffs and those similarly situated such other and further relief as the Court may deem appropriate, just, and proper.

Dated: April 4, 2013

Respectfully submitted,

**Consumer Law Practice of Daniel T. LeBel**

_____
Daniel T. LeBel

601 Van Ness Avenue, Suite 2080
San Francisco, CA 94102
Telephone: (415) 513-1414
Fascimile: (877) 563-7848

- and -

**Center for Science in the Public Interest**
Stephen Gardner
Amanda Howell
5646 Milton Street, Suite 211
Dallas, TX 75206
Telephone: (214) 827-2774
Facsimile: (214) 827-2787

*Lead Counsel for Plaintiffs*

- and -

**Mehri & Skalet, PLLC**
Steven A. Skalet
Craig L. Briskin
1250 Connecticut Ave., N.W., Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997

- and –

**THE STURDEVANT LAW FIRM, PC**
James C. Sturdevant
354 Pine Street, Fourth Floor
San Francisco, CA 94104
Telephone: (415) 477-2410
Facsimile: (415) 477-2420

- and -

**RUKIN HYLAND DORIA & TINDALL LLP**
Whitney Stark
100 Pine Street #2150
San Francisco, California 94111
Telephone: (415) 421-1800 Ext. 212
Facsimile: (415) 421-1700

*Counsel for Plaintiffs and the Proposed Class*