United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEE HENSLEY-MACLEAN, and JENNIFER ROSEN, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br>  v.<br><br>SAFEWAY, INC.,<br><br>    Defendant.<br>_____/ | No. CV 11-01230 RS<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT AND DENYING AS MOOT PLAINTIFF'S RULE 56(d) MOTION** |

## I. INTRODUCTION

Plaintiffs Dee Hensley-Maclean and Jennifer Rosen bring this putative class action against defendant Safeway, Inc. They claim Safeway violates various California consumer protection statutes and California common law by failing to notify certain customers of recalls on food items they previously purchased. Safeway moves for summary judgment, arguing California law does not impose a post-sale duty to warn on grocers. Plaintiffs urge the denial of the motion or, in the alternative, move pursuant to Rule 56(d) of the Federal Rules of Civil Procedure to conduct limited discovery pending a final adjudication on summary judgment. Because California negligence law imposes a general duty of care and Safeway advances no basis to carve out an exception, Safeway's

1  motion must be denied.  In light of that determination, plaintiffs' Rule 56(d) motion is denied as
2  moot.

## II.   BACKGROUND

Safeway is one of the nation's largest grocery retailers, operating 1,739 stores throughout the United States, over 500 of which located in California.  Plaintiffs are regular Safeway customers and members of Safeway's "Club Card" loyalty program.  Pursuant to that program, Safeway solicits contact information, including phone numbers and email addresses, of Club Card members.

Plaintiffs brought this action in state court, alleging they purchased tainted food products ("the Recalled Products") at Safeway stores, which the Food and Drug Administration ("FDA") and the United States Department of Agriculture ("USDA") subsequently recalled ("the Class I Recalls").[1]  They claim that, under various California consumer protection statutes and California common law, Safeway is legally obligated to notify its Club Card members of the Class I Recalls.  Safeway removed the action to federal court, contending the case falls within the Class Action Fairness Act and that the parties are subject to diversity jurisdiction.  *Id.* at ¶¶ 5–10.

In May of 2013, plaintiffs filed a motion for class certification.  (ECF No. 78).  At the motion hearing, it became clear that deciding the legal question of Safeway's duty to warn could simplify, and potentially dispose of, the class certification issues.   Consequently, plaintiffs withdrew their motion pending decision on that legal question.  Safeway now moves for partial summary judgment, arguing that no California statute, regulation, or other legal authority supports a post-sale duty to warn.  (ECF No. 109).

## III.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of demonstrating the absence of a genuine

---

[1] The FDA and USDA each use three classes of recall. (Amended Compl., ECF No. 74 at ¶ 2 & n.1). Plaintiffs' action is limited to Class I Recalls, which occur when there is a reasonable probability that use of the product will cause serious, adverse health consequences or death.

1  issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant succeeds,
2  the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a
3  genuine issue for trial."  Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 323.  A genuine issue of
4  material fact is one that could reasonably be resolved in favor of the nonmoving party and that
5  could affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
6  The court must view the evidence in the light most favorable to the nonmoving party and draw all
7  justifiable inferences in its favor. *Id.* at 255.

8  "[A] federal court interpreting state law is bound by the decisions of the highest state court."
9  *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1391 (9th Cir. 1994).  However, "federal courts are
10 not precluded from affording relief simply because neither the state supreme court nor the state
11 legislature has enunciated a clear rule governing a particular type of controversy or claim." *Id.*
12 "Where the state supreme court has not spoken on an issue presented to a federal court, the federal
13 court must determine what result the state supreme court would reach based on state appellate court
14 opinions, statutes, and treatises." *Id.*

## IV. DISCUSSION

Plaintiffs advance their duty to warn theory under several alternative statutory and common law bases.[2]  They are addressed in turn.

### A. Strict Liability

Plaintiffs first contend Safeway has a duty to warn under California common law.  Under the state's common law concept of strict liability, Safeway has no duty to warn of defects that were unknown and unknowable at the time of sale.  "Strict liability has been imposed for three types of product defects: manufacturing defects, design defects, and 'warning defects.' . . . The third category describes products that are dangerous because they lack adequate warnings or instructions." *O'Neil v. Crane Co.*, 53 Cal. 4th 335, 347 (2012) (internal citations omitted).  "The purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are

---

[2] Although not clearly delineated in the Amended Complaint, plaintiffs apparently argue Safeway's common law duty to warn arises under both strict liability and negligence doctrines.

powerless to protect themselves." *Greenman v. Yuba Power Products, Inc.*, 59 Cal. 2d 57, 63 (1963).

The California Supreme Court has extended strict liability to product retailers because, "as an 'integral part of the overall producing and marketing enterprise,' they too should bear the cost of injuries from defective products." *O'Neil*, 53 Cal. 4th at 348 (quoting *Vandermark v. Ford Motor Co.*, 61 Cal. 2d 256, 262 (1964)).   As the court explained:

> In some cases the retailer may be the only member of that enterprise reasonably available to the injured plaintiff.  In other cases the retailer himself may play a substantial part in insuring that the product is safe or may be in a position to exert pressure on the manufacturer to that end; the retailer's strict liability thus serves as an added incentive to safety.  Strict liability on the manufacturer and retailer alike affords maximum protection to the injured plaintiff and works no injustice to the defendants, for they can adjust the costs of such protection between them in the course of their continuing business relationship.

*Vandermark*, 61 Cal. 2d at 262–63 (internal citation omitted); *see also Jimenez v. Superior Court*, 29 Cal. 4th 473, 477–87 (2002) (stating strict product liability extends to retailers).

"Strict liability encompasses all injuries caused by a defective product, . . . [h]owever, the reach of strict liability is not limitless." *O'Neil*, 53 Cal. 4th at 348.  Under California law, strict liability for a failure to warn is only imposed when the risk of harm is known or knowable. *Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 1000–4 (1991) ("[K]nowledge, actual or constructive, is a requisite for strict liability for failure to warn[.]" ).  Moreover, whether the risk was known or knowable is assessed at the time the product was distributed.  *Johnson v. Am. Standard, Inc.*, 43 Cal. 4th 56, 64 (2008) ("Typically, under California law, we hold manufacturers strictly liable for injuries caused by their failure to warn of dangers that were known to the scientific community at the time they manufactured and distributed their product."); *Carlin v. Superior Court*, 13 Cal. 4th 1104, 1111 (1996) (noting prior cases "refused to extend strict liability to the failure to warn of risks that were unknown or unknowable at the time of distribution."); *Brown v. Superior Court*, 44 Cal. 3d 1049, 1072 n.8 (1988) ("[A] manufacturer's knowledge should be measured at the time a [product] is distributed because it is at this point that the manufacturer relinquishes control of

the product."); *Torres v. Xomox Corp.*, 49 Cal. App. 4th 1, 16 (1996) ("[S]trict liability for failing to warn extends only to risks which are 'known or knowable' when a product is sold[.]").

Thus, under well-established principles of California law, Safeway's duty to warn under strict liability extends only to those risks of which it had actual or constructive knowledge at the time of sale. Without evidence indicating Safeway was aware of the Class I Recalls at the time it sold the Recalled Products, strict liability cannot sustain plaintiffs' post-sale duty to warn theory.[3]

B. Negligence

1. California law imposes a general duty of care

California negligence law provides a general duty of ordinary care and Safeway has not shown a statutory or public policy exception justifying a post-sale, no-duty rule. "The existence and scope of duty are legal questions for the court. In determining those questions, we begin always with the command of . . . section 1714[.]" *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 477 (2001) (internal citations and quotations omitted). California Civil Code § 1714 establishes a general duty of care under California law. Cal. Civ. Code § 1714(a) ("Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person . . . ."); *Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764, 771 (2011) ("The general rule in California is . . . each person has a duty to use ordinary care and is liable for injuries caused by his failure to exercise reasonable care in the circumstances[.]") (internal quotation marks omitted). "In the absence of a statutory provision limiting this rule, exceptions to the general principle imposing liability for negligence are recognized only when clearly supported by public policy." *Christensen v. Superior Court*, 54 Cal. 3d 868, 885 (1991) (citing *Rowland v. Christian*, 69 Cal. 2d 108, 112 (1968) *legislatively superseded on other grounds in Calvillo-Silva v. Home Grocery*, 19 Cal. 4th 714, 721 (1998)).

---

[3] At oral argument, plaintiffs urged their strict liability theory should survive under *Davis v. Wyeth Labs, Inc.*, 399 F.2d 121 (9th Cir. 1968). *Davis* states that breach of implied warranty of fitness and strict liability in tort are essentially the same claim. *Id.* at 126 ("[U]nder either approach the elements remain the same. The difference is largely one of terminology."). Because the plaintiffs have not shown Safeway's post-sale duty to warn arises under an implied warranty, *Davis* does not support the plaintiffs' position.

Safeway has not pointed to any statutory provision limiting its general duty of care and must therefore rely on a public policy exception. To determine whether such an exception should be recognized, the California Supreme Court set out a variety of factors for consideration, including:

> the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

*Rowland*, 69 Cal. 2d at 112–13. "[T]he *Rowland* factors are evaluated at a relatively broad level of factual generality." *Cabral*, 51 Cal. 4th at 772. The court's task is not to ask whether the facts of the particular case support an exception, but rather "whether carving out an entire category of cases from [the] general duty rule is justified by clear considerations of policy." *Id.*

Safeway has failed to show that consideration of the *Rowland* factors weighs in favor of a post-sale, no-duty rule for this category of cases.[4] The first three *Rowland* factors are all closely related to the question of foreseeability. *See id.* at 774–81. In the generalized sense of foreseeability pertinent to the duty question, the prospect that a grocer's customers might consume recalled products and become ill if not warned the goods are dangerous, is plainly foreseeable. Food recalls are imposed precisely because of the risks consumption poses to health and safety. Moreover, common experience shows that, absent intervening circumstances, customers generally consume the products they purchase from grocers. Safeway provides no reason why this category of injury is unforeseeable, nor does Safeway argue that its failure to warn is too attenuated from the plaintiffs' injuries to support liability. *Id.* at 779 ("[W]here the injury suffered is connected only distantly and indirectly to the defendant's negligent act, the risk of that type of injury . . . is likely to be deemed unforeseeable.").

With respect to *Rowland*'s remaining factors, "the overall policy of preventing future harm is ordinarily served, in tort law, by imposing the costs of negligent conduct upon those responsible.

---

[4] Because Safeway seeks to prevail on the theory that no California statute, regulation, or case imposes a post-sale duty to warn, it does not fulsomely argue for a public policy exception to that duty. As explained herein, even if no legal authority affirmatively imposed a post-sale duty, that would not end the analysis of Safeway's duty under California negligence law.

The policy question is whether that consideration is outweighed, for a category of negligent conduct, by laws or mores indicating approval of the conduct or by the undesirable consequences of allowing potential liability." *Id.* at 781–82. Safeway does not point to any laws or mores indicating approval of a grocer refraining from contacting customers after a sale. Moreover, Safeway does not offer any negative consequences which would flow from imposing liability on grocers under these circumstances. Safeway presents no evidence, for example, showing as a matter of law that an obligation to warn under the circumstances is too burdensome to justify liability. *See id.* at 784 n.3 (noting courts conducting the duty analysis may consider the "overall social impact of imposing a significant precautionary obligation on a class of actors").

Indeed, to the extent Safeway presents policy arguments, it claims its duty should be limited because it is a vendor, not a manufacturer. Safeway argues manufacturers are motivated by the market for its products to improve continually and will have superior knowledge of later discovered defects. Moreover, manufacturers are better able to formulate warnings describing the precise dangers of a given product. While these rationales might support differing duties of care for manufacturers and retailers in other contexts, they do not clearly justify a no-duty rule for the category of cases implicated here. Safeway does not claim that after the Class I Recalls are instituted, it lacks adequate knowledge of the dangerous nature of the Recalled Products to formulate a meaningful warning. Nor has Safeway shown it is unable to provide warnings to ultimate consumers or even that food manufacturers are categorically better positioned to do so.[5] In sum, Safeway has not carried its burden of demonstrating a policy justification for exempting grocers from a duty of ordinary care.

2.  California case law does not support a "no duty" rule

Instead of providing a policy justification to limit its general duty of care, Safeway argues that no California statute, regulation, or case has ever found a post-sale duty to warn in like circumstances. As an initial matter, this argument completely ignores section 1714.[6] Even

---

[5] Safeway has previously argued that it lacks accurate contact information for its Club Card members. Although Safeway remains free to argue that providing notice of the Class I Recalls is impractical or infeasible, it has not taken these positions for purposes of its present motion.

[6] Safeway does not mention § 1714 in either its motion or reply.

accepting the premise that no California case has ever found a post-sale duty to warn, it would not follow that no such duty exists.[7]  Whether a retailer's general duty of care continues after the time of sale may very well be a question of first impression, but this does not end the inquiry.  In absence of controlling state court precedent, "the federal court must determine what result the state supreme court would reach based on state appellate court opinions, statutes, and treatises." *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1391 (9th Cir. 1994).  As noted, the California Supreme Court has consistently stated that in the absence of a statutory or public policy exception, Section 1714's general duty of care applies.

In addition, numerous California decisions have stated or implied a duty of care may extend beyond the point of sale.  For example, in *Hasson*, the California Supreme Court upheld a jury verdict of negligence against automobile manufacturer Ford, despite a finding that there was no defect "at the time [the car] . . . was manufactured and sold . . . ." *Hasson v. Ford Motor Co.*, 19 Cal. 3d 530, 543 (1977) *overruled on other grounds in Soule v. Gen. Motors Corp.*, 8 Cal. 4th 548 (1994) (brackets original).  In that case, evidence revealed that, even if the car's brake system was not defective at the time the automobile entered the market, it might have failed as a result of certain conditions present at the time of the accident.  In reconciling the jury verdicts, the Court stated "the jury may have concluded that the braking system and the fluid were, at the outset, sound and fit for their intended purpose, but that Ford was nonetheless liable for its failure during the ensuing four years to warn of conditions which might develop in use." *Id.*  The court implicitly recognized that Ford's failure to warn during the four year period following the sale would be a valid basis for the jury's negligence verdict.[8]

---

[7] Safeway has similarly pointed to no California case law rejecting a post-sale duty in this or analogous circumstances.

[8] Worthy of note, *Hasson* did not hold the jury's finding was necessarily based on a continuing duty to warn.  The court also found that the jury may have believed that failure to warn could not constitute a defect for purposes of the special interrogatories. *See Hasson*, 19 Cal. 3d at 543 ("The jury could reasonably believe that the interrogatory thereby intended to exclude consideration of any 'defect' based on a failure to warn.").  Thus, the jury also may have found Ford's failure to warn made the car defective at the time of sale, despite their special interrogatory finding of no defect. *Id.*  That the court described an alternative basis for liability does not diminish the court's implicit recognition of Ford's potential post-distribution duty to warn.

Several California appellate decisions have also stated that a manufacturer's duty of care may continue after sale and distribution. *See Oxford v. Foster Wheeler LLC*, 177 Cal. App. 4th 700, 721 (2009) ("[N]egligence of a manufacturer may be established by a failure to act after the product has been distributed to its end user[.]"); *Torres*, 49 Cal. App. 4th at 16 ("[A] duty to warn may also arise if it is later discovered that the product has dangerous propensities, and breach of that duty is a form of negligence."); *Hernandez v. Badger Constr. Equip. Co.*, 28 Cal. App. 4th 1791, 1827–28 (1994) (finding a "failure to conduct an adequate retrofit campaign may constitute negligence"); *see also Rosa v. Taser Int'l, Inc.*, 684 F.3d 941, 949 (9th Cir. 2012) ("[T]hough California law measures the strict liability duty to warn from the time a product was distributed, a manufacturer may be liable under negligence for failure to warn of a risk that was subsequently discovered."). These cases trace the post-sale duty to *Lunghi v. Clark Equip. Co.*, where the appellate court reversed a trial court for not instructing the jury on a plaintiff's negligence theory. 153 Cal. App. 3d 485, 491–94 (1984). The trial court refused to give the instruction, based on its understanding that "if there [was] no defect in the machine, negligence in designing the machine could not be a basis for recovery." *Id.* at 492.

The appellate court in *Lunghi* reversed for two reasons. First, the strict liability jury instruction failed to indicate that a design defect could be based on a failure to warn or inadequate warning. Second, the plaintiff's liability theory did not necessarily depend on a strict liability design defect. The court noted the plaintiff "presented evidence on negligence quite apart from the design issue, pertaining to the 'retrofit campaign.'" *Id.* at. 494. Specifically, that the defendant made inadequate "efforts to notify owners of the [product] . . . about the dangerous propensities of the machine discovered after the machine had been on the market for awhile, and the availability of safety devices which the manufacturer would install." *Id.* The court concluded that, "[e]ven if, properly instructed, the jury had found that none of the mechanical design features in issue . . . constituted a defect, it could still have found that [defendant's] knowledge of the injuries caused by these features imposed a *duty to warn* of the danger, and/or a *duty to conduct an adequate retrofit*

*campaign.*" *Id.* (emphasis original). Thus, *Lunghi* also recognizes that a seller's duty of ordinary care does not necessarily terminate at the point of sale.

In short, California negligence law imposes a general duty of ordinary care and Safeway has not shown either a statutory or public policy exception justifying a post-sale, no-duty rule. Moreover, numerous California decisions have explicitly or implicitly recognized that a seller's duty under negligence may extend beyond the point of sale. Safeway, therefore, has failed to show that no post-sale duty to warn exists under California negligence law and its motion for summary judgment must be denied.

C. Consumer Legal Remedies Act (CLRA) Claim

Plaintiffs maintain that the CLRA provides an independent basis for Safeway's post-sale duty to warn. However, the CLRA only applies to representation and omissions that occur during pre-sale transactions. "The California Consumers Legal Remedies Act bans certain practices that the California legislature has deemed to be 'unfair' or 'deceptive.'" *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1093 (N.D. Cal. 2007). The CLRA, in relevant part, provides:

> (a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:
>
> . . . .
>
> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.
>
> . . . .
>
> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

Cal. Civ.Code § 1770(a) (5), (7).

Plaintiffs advance two theories for their CLRA claim. First, they maintain that, even if unaware of any safety risk at the time of sale, Safeway's failure to warn its customers after learning of the Class I Recalls violated the CLRA. Plaintiffs argue that, because Safeway represented its food was safe to eat when purchased, the subsequent failure to inform its customers constituted a fraudulent omission. *See Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835

(2006) ("[A]lthough a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose."). Plaintiffs maintain the CLRA prohibits omissions where there is a duty to disclose, and that such a duty exists when the defendant: (1) is in a fiduciary relationship with the plaintiff; (2) had exclusive knowledge of material facts not known to the plaintiff; (3) actively conceals a material fact from the plaintiff; and (4) makes partial representations but also suppresses some material fact. *Falk*, 496 F. Supp. 2d at 1095 (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)). According to plaintiffs, Safeway had exclusive knowledge of material facts—the identity of the Recalled Products, the dates they were sold, and the identity of the purchasers—giving rise to a duty to disclose.

Assuming Safeway made representations at the time of sale that the Recalled Products were safe to eat, those representations do not become unfair or deceptive simply because they later prove false. *See Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1163 (N.D. Cal. 2011) ("[A] representation will not violate the CLRA if the defendant did not know, or have reason to know, of the facts that rendered the representation misleading at the time it was made."); *Neu v. Terminix Int'l, Inc.*, C 07-6472 CW, 2008 WL 2951390, at *3 (N.D. Cal. July 24, 2008) (dismissing plaintiff's CLRA claim because plaintiff failed to aver "Defendants knew that [their] statements were false when made."). Although an omission may, in some circumstances, constitute an unfair or deceptive act, by its terms the CLRA requires that act be "undertaken by [a] person *in a transaction* intended to result . . . in the sale or lease of goods[.]" § 1770(a) (emphasis added). The flaw in plaintiffs' approach is that Safeway's post-sale failure to warn does not occur in the context of a transaction. Rather, these omissions occur after the transaction had been completed.

Accordingly, for purposes of the CLRA, the relevant representations and omissions are those during transactions leading up to a sale. In *Baba v. Hewlett-Packard Co.*, for example, the plaintiffs alleged defendant HP knowingly sold computers with defective fans, in violation of the CLRA. C 09-05946 RS, 2010 WL 2486353, at *1 (N.D. Cal. June 16, 2010). The plaintiffs argued HP had a duty to disclose, because, among other things, the defendant had exclusive knowledge of the defects.

*Id.* at *5.  While a product defect may give rise breach of warranty claims, the presence of a defect is not actionable under the CLRA "without proof of more, such as the fact that the defendant sold a product it was aware was defective."  *Id.* at *4; *see also Kowalsky*, 771 F. Supp. 2d at 1163 ("[A] representation is not 'deceptive' under the UCL or the CLRA simply because an unanticipated product defect calls the prior representation into question.").  The plaintiffs' CLRA claim was dismissed, because there was "no averment that HP actually knew of the alleged defects at the time of the sales[.]" *Baba*, 2010 WL 2486353 at *5; *see also In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1095 (S.D. Cal. 2010) ("[Defendant] had no duty to disclose facts of which it was unaware.").  Although the plaintiffs averred HP was aware of internet postings describing the defect, the postings did not include dates and "therefore shed no light on when HP knew of the alleged defects."  *Baba*, 2010 WL 2486353 at *5.  Thus, it is the defendant's pre-sale representations and omissions that matter under the CLRA.  *See id.* ("[Post-sale] behavior is irrelevant to the question of whether HP made false statements to plaintiffs before or during their respective transactions which induced them to purchase the computers.").[9]

The cases upon which plaintiffs rely are not to the contrary.  They point to decisions stating a failure to disclose safety hazards may be actionable under the CLRA.  *See*, *e.g.*, *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 827 (S.D. Ohio 2012) ("A defect that poses an objective, identifiable safety risk to consumers will trigger a duty to disclose under the CLRA.").  These cases simply stand for the proposition that the CLRA requires a seller to disclose known safety risks at the time of sale.  For example, in *Porsche Cars* the district court expressly assumed for purposes of analysis that the defendant "knew of the alleged defect at the time it sold the vehicles."  880 F. Supp.

---

[9] Plaintiffs attempt to distinguish *Baba* and *Kowalski*, as neither involved an alleged safety hazard. Whether the alleged defect relates to safety is relevant to the defects materiality.  Some California cases hold that, even if a manufacturer knew of a defect at the time of sale, the failure to disclose that defect may not be material—i.e. actionable under the CLRA—unless it involves a safety risk. *See Daugherty*, 144 Cal. App. 4th at 836 (finding no duty to disclose engine defect where there were no allegations it posed a safety risk); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1234 (C.D. Cal. 2011) ("[F]or the omission to be material, the failure must pose 'safety concerns.'").  Neither *Baba* nor *Kowalski* relied on lack of materiality to dismiss their respective CLRA claims.  Plaintiffs attempt to distinguish on these grounds is therefore unpersuasive.

2d at 817. Similarly, in *Cholakyan v. Mercedes-Benz USA, LLC*, the district court denied defendant's motion to dismiss a CLRA claim where the plaintiff alleged "that defendant knew and concealed the defects . . . both at the time of sale and thereafter." 796 F. Supp. 2d 1220, 1226 (C.D. Cal. 2011); *see also Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 253 (2011) (finding complaint stated CLRA violation where defendant's executives "directed the company to continue to sell the defective computers" after the defect was discovered); *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 919 (C.D. Cal. 2010) (finding plaintiff sufficiently alleged BMW's knowledge of the defect "at the time Plaintiff and class members purchased their Minis").

Even if the CLRA does not impose such a duty, plaintiffs maintain that because Safeway may have had reason to know of the Class I Recalls prior to selling the Recalled Products, they should be allowed to pursue additional discovery to demonstrate such knowledge. Accordingly, plaintiffs move pursuant to Rule 56(d) of the Federal Rules of Civil Procedure to continue or deny Safeway's summary judgment motion pending completion of limited discovery. As noted above, Safeway's representations or omissions may constitute a CLRA violation if Safeway was aware at the time of sale of facts that would render those representations misleading. Because this order finds plaintiffs' action may proceed under a negligence theory, plaintiffs' Rule 56(d) motion is moot.

### D. Unfair Competition Law (UCL) Claim

Plaintiffs claim that Safeway's duty to warn may be established under the UCL. That statute prohibits acts or practices which are (1) fraudulent, (2) unlawful, or (3) unfair. Cal. Bus. & Prof. Code § 17200 *et seq.*; *Falk*, 496 F. Supp. 2d at 1097–98. Plaintiffs allege defendants violated all three prongs of the UCL.

#### 1. Fraudulent and Unlawful Prongs

With respect to the fraudulent prong, plaintiffs argue the UCL requires the same showing for misrepresentation as does the CLRA. *See Kowalsky*, 771 F. Supp. 2d at 1162 ("Generally, the standard for deceptive practices under the fraudulent prong of the UCL applies equally to claims for misrepresentation under the CLRA."). Moreover, plaintiffs maintain Safeway's violations of the CLRA and "other violations" satisfy the UCL's unlawful prong. *Kasky v. Nike, Inc.*, 27 Cal. 4th

939, 949 (2002) ("By defining unfair competition to include any '*unlawful* . . . business act or practice' . . . the UCL permits violations of other laws to be treated as unfair competition that is independently actionable.") (emphasis original).  Safeway does not substantively dispute either of these positions.  Instead Safeway argues that plaintiffs' UCL claim must fail under these prongs, because they have not established a CLRA violation and none of their other theories are viable.  Because this order does not find plaintiffs' negligence claim fails as a matter of law, plaintiffs' UCL claim may proceed to the extent it is based upon Safeway's established negligence.

        2.      Unfair Prong

Plaintiffs may also proceed under the unfair prong of the UCL.  With respect to this prong, the parties dispute the appropriate test of unfairness.  This district recently addressed the question in *Lyons v. Bank of Am. NA*. 11-01232 CW, 2011 WL 3607608, at *9 (N.D. Cal. Aug. 15, 2011) ("The definition of an unfair business practice in consumer cases has been unsettled in light of the California Supreme Court ruling in *Cel–Tech*, which criticized previous definitions as too amorphous and provided a definition in the context of an antitrust case.").  Because *Cel-Tech* "left open the definition of unfairness in consumer cases," *Lyons* looked to the "decisions of state intermediate appellate courts" to determine the appropriate standard:

> California appellate courts have applied three different approaches for determining unfairness in consumer cases.  The first approach determines whether the alleged business practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers by weighing the utility of the defendant's conduct against the seriousness of the harm to the alleged victim.  The second approach requires that the unfairness claim be defined in connection with a legislatively declared public policy that is "tethered" to specific constitutional, statutory, or regulatory provisions.  The third approach applies the three factors constituting unfairness in the Federal Trade Commission Act: (1) the injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) the injury must be one that the consumer could not reasonably have avoided.

*Id.* at 9–10 (internal citations omitted).

The court found the reasoning in *Camacho v. Automobile Club of Southern California*, which adopted the third approach, persuasive and followed by many appellate and federal district courts.  *Id.* at 10 (citing 142 Cal. App. 4th 1394, 1402 (2006)).  *Camacho* found that *Cel–Tech* overruled the

first approach to unfairness, because "definitions that are too amorphous in the context of anticompetitive practices are not converted into satisfactorily precise tests in consumer cases." *Camacho*, 142 Cal. App. 4th at 1402. *Camacho* also rejected the "tethering" approach that *Cel-Tech* adopted for antitrust cases. *Id.* at 1402–03. *Camacho* reasoned that the approach did not comport with the broad scope of the UCL and did not support its underlying principle, that a practice can be unfair even if it is not unlawful. *Id.* In adopting the third approach, *Camacho* noted that *Cel-Tech* itself turned to the Federal Trade Commission Act for guidance. *Id.* at 1403. The parties provide no reason to depart from the reasoning in *Camacho* adopted in *Lyons*.

Applying the three factors constituting unfairness, Safeway has failed to show its failure to inform customers of the Class I Recalls is fair as a matter of law. Safeway provides no evidence that plaintiffs' injuries are insubstantial or are outweighed by countervailing benefits to consumers or competition. Nor has Safeway shown that plaintiffs' injuries could have been reasonably avoided. Although Safeway argues plaintiffs could have discovered the Class I Recalls through other means—such as announcements by the food manufacturer or the FDA—it has not shown these alternatives reasonably inform plaintiffs of the danger of the Recalled Products.

## V.   CONCLUSION

For the reasons stated herein, Safeway's motion for summary judgment must be denied. Safeway fails to show that California negligence law does not recognize a post-sale duty to warn. Because this order finds Safeway is not entitled to judgment as a matter of law, plaintiffs' Rule 56(d) motion to continue or deny Safeway's summary judgment motion is denied as moot. The parties shall appear for a further case management conference on May 15th at 10 a.m. and will file an updated case management statement one week prior.

IT IS SO ORDERED.

DATED:  4/7/14

_____
RICHARD SEEBORG
United States District Judge