UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DEE HENSLEY-MACLEAN, et al.,

          Plaintiffs,

    v.

SAFEWAY, INC.,

          Defendant.

Case No.  11-cv-01230-RS

**ORDER DISMISSING CLAIMS OF NAMED PLAINTIFFS FOR LACK OF STANDING AND GRANTING MOTION FOR LEAVE TO AMEND**

## I.  INTRODUCTION

In this putative class action, plaintiffs complain that defendant Safeway, Inc. fails to take appropriate steps to notify customers when food products they have purchased become subject to recalls ordered by the Food and Drug Administration ("FDA") or the United States Department of Agriculture ("USDA") involving serious threats to health and safety.[1]  Plaintiffs' central theory is that because Safeway operates the "Safeway Club Card" program whereby the purchases of customers using those cards are recorded, Safeway should provide email notice of recalls, utilizing the email address information it collects and maintains in connection with the Club Card program.

Discovery has now established, however, that the products the named plaintiffs allegedly purchased were not in fact subject to any recalls.  As such, they lack standing to pursue this action,

---

[1]  The FDA and USDA each use three classes of recall.  Plaintiffs' action is limited to Class I Recalls, which occur when there is a reasonable probability that use of the product will cause serious, adverse health consequences or death.

United States District Court
Northern District of California

1    and their claims must be dismissed.  The motion for leave to amend to substitute other members of

2    the putative class as new named plaintiffs, however, will be granted.

3                                        **I.  DISCUSSION**[2]

4          A.  Procedural posture

5          Safeway frames its challenge to standing of the named plaintiffs as a motion to dismiss

6    under Rule 12(b)(1) of the Federal Rules of Civil Procedure and/or as a motion for summary

7    judgment under Rule 56.  Neither label is technically appropriate.  As a Rule 12(b)(1) motion, the

8    challenge would be untimely.  *See Augustine v. United States*, 704 F.2d 1074, 1075 n. 3 (9th Cir.

9    1983) ("The government's motion was framed as a Fed.R.Civ.P. 12(b)(1) motion to dismiss.

10   Because that motion was made after the government's responsive pleading, it was technically

11   untimely.")

12         Proceeding under Rule 56 is also not warranted.  While Rule 56 standards do apply "where

13   the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is

14   dependent on the resolution of factual issues going to the merits," *Augustine*, 704 F.2d at 1077,

15   that is not the circumstance here.  The jurisdictional question is merely the threshold inquiry as to

16   whether the products plaintiffs purchased were subject to a recall, not any of the more complicated

17   factual disputes going to the merits.[3]  Even where the jurisdictional facts must be resolved on

18   summary judgment or at trial, the ultimate result where the facts show a lack of jurisdiction is a

19   dismissal, not a judgment.  *See id.* at 1079.

20         Notwithstanding the labeling of the motion, however, it is not only appropriate, but

21   necessary, for the jurisdictional issue to be considered and resolved.  The motion will be deemed

22   as properly before the court as a Rule 12(h)(3) suggestion of lack of subject matter jurisdiction.

23

24

25   [2]  Additional general background has been set out in prior orders and will not be repeated here.

26   [3]  Nevertheless, even assuming a Rule 56 standard should be applied to resolving that threshold
     question of whether plaintiffs purchased recalled goods, the record is sufficient to conclude that
27   plaintiffs have failed to raise a triable issue of fact, for the reasons discussed below.

28

United States District Court
Northern District of California

*See id.* at 1075 n. 3.

    B.  <u>Plaintiffs' purchases</u>

      The two named plaintiffs presently in this action are Dee Hensley-Maclean and Sarah Duncan.[4]  Hensley-Maclean, a Montana resident, alleges that in 2008 she purchased from a local Safeway an unspecified brand of peanut butter crackers and Nutter Butter Sandwich Cookies that were the subject of a Class I recall involving peanut butter products in January of 2009.  Plaintiffs do not dispute, however, that discovery has shown the Nutter Butter Sandwich Cookies were never part of the recall.

      As for the peanut butter crackers, in deposition Hensley-Maclean could not recall the date she purchased any from Safeway, the brand she purchased, or any other details of her purchase. She suggested that they "probably" were Keebler brand, but admitted that she "does not know," and agreed it was just "speculation."  She ultimately admitted that she had no evidence to substantiate her purported purchases from Safeway (if any) or to establish whether any such purchases were actually subject to the recall.  Safeway's Club Card records show *no* purchases by Hensley-Maclean of any peanut butter crackers during the relevant time period.[5]

      In opposition, Hensley-Maclean reasserts that she is "sure" she purchased recalled peanut butter products at Safeway and she argues that Safeway's records must be wrong.  Hensley-Mclean declares that she has reviewed her own credit card receipts (which she does not attach) and found five instances where they allegedly do not match the Club Card records produced by Safeway.  Hensley-Maclean provides details on only two of these alleged discrepancies.  In an August 1, 2008 transaction, Hensley-MacLean contends her credit card was charged only $19.19, whereas the Club Card record shows $21.25 in purchases.  In fact, the records provided with

---

[4]  A prior named plaintiff, Jennifer Rosen, is discussed below.

[5]  Hensley-Maclean testified she *always* used her Club Card.  Even assuming she failed to do so on some occasion when purchasing recalled products, her claims would fail because she could not then fault Safeway for failing to use her Club Card information to provide her notice.

United States District Court
Northern District of California

1    Safeway's reply brief show that Hensley-MacLean received a credit for a $2.00 "manufacture [sic]

2    coupon" and a $.06 "misc" credit, such that her credit card was charged the same $19.19 amount

3    her own records reflect.   Safeway's record for a September 8, 2008 transaction shows that

4    Hensley-McLean's credit card was in fact charged the same $6.72 of her Club Card total.  While it

5    is unclear why Hensley-McLean's own records would show a smaller charge of $5.15, the alleged

6    discrepancy is insufficient to create a triable issue of fact as to whether Hensley-McLean ever

7    bought recalled products that were or should have been shown in Safeway's Club Card records,

8    such that it could have provided her with the email notice she claims she was due.

9         The other presently named plaintiff, Sarah Duncan, bases her claims on her purchase of a

10   package of six Lucerne eggs from a Bay Area Safeway in May of 2010. In August of that year,

11   Safeway received a series notices of an egg recall from distributors who had obtained eggs from

12   producers in Iowa. The notices collectively covered certain Lucerne branded eggs designated with

13   UPC codes 2113003523, 2113003225, and 2113003155, which are for 12, 18 and 60-egg

14   packages, respectively.  On receiving notice, Safeway pulled any remaining inventory from sale,

15   issued press releases, posted signs, and, when the recall expanded, used automated calls to contact

16   the smaller group that had purchased the 60 egg packages sold in a limited number of stores.  The

17   recall was limited to those packages stamped with certain Julian dates and certain plant codes. The

18   earliest Julian date covered by the recall was 136, which corresponds to eggs packaged on May 16,

19   2010, which is the 136th day of 2010.

20        Duncan's Safeway Club Card records show that she purchased Lucerne eggs from a San

21   Francisco Bay Area Safeway on May 17, 2010. Specifically, she purchased a six pack of Lucerne

22   eggs designated with UPC 5820000580, which was not part of the recall. Duncan did not know,

23   prior to her deposition, that the egg recall was limited to specific dates and specific plants.  When

24   asked, "How do you know that your eggs purchased on May the 17th, 2010 were part of the egg

25   recall?" she said, "I don't."

26        In opposition to the present motion, plaintiffs argue that an FDA press release suggested

27   that 6-egg cartons were among those recalled at the time, contrary to the evidence on which

28

United States District Court
Northern District of California

1    Safeway relies.[6]  Plaintiffs also contend that ongoing and/or further discovery might "resolve the

2    factual discrepancy" as to whether the eggs Duncan purchased were recalled.  Whatever

3    skepticism plaintiffs may have held about the reliability of Safeway's documentation regarding the

4    scope of the recall when this motion was filed, it appears that in the intervening time period, they

5    have completed their efforts to test the evidence and have uncovered nothing suggesting that the

6    eggs purchased by Duncan were ever part of the recall.[7]

7           Accordingly, the record establishes neither Hensley-Mclean nor Duncan in fact purchased

8    products subject to Class 1 recalls as they originally alleged, and their general and vague

9    recollections to the contrary are not sufficient to create a triable issue of fact.  It is well-settled law

10   that "if none of the named plaintiffs purporting to represent a class establishes the requisite of a

11   case or controversy with the defendants, none may seek relief on behalf of himself or any other

12   member of the class." *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir.

13   2003)(quoting *O'Shea v. Littleton*, 414 U.S. 488, 494, (1974)).

14          Plaintiffs insist that even if they lack standing to pursue damage, restitution, or other

15   claims arising out of purchases of recalled products, they nonetheless have standing to pursue

16   *injunctive* relief to compel Safeway to adopt different notification policies for any future recalls.

17   Particularly absent a past injury, plaintiffs cannot predicate a right to relief on such contingencies.

18   *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) ("The plaintiff must

19   demonstrate that he has suffered or is threatened with a 'concrete and particularized' legal harm,

20   coupled with 'a sufficient likelihood that he will again be wronged in a similar way.'" (emphasis

21   added) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) and *Los Angeles v.*

22

23   _____

     [6]  While the FDA press release refers to numerous retailers' products and various package sizes, it
24   does not represent that all affected package sizes were sold at all of the listed retailers.

25   [7] Plaintiffs also argue that Safeway has relied on "hearsay" evidence to establish the scope of the
     recall.  It is unclear what plaintiffs contend is hearsay—the notices Safeway received are not
26   hearsay, because the issue is not whether those notices were "true" (i.e., whether they accurately
     stated the intended scope of the recall).  See Fed. R. Evid. 801(c) Advisory Note ("If the
27   significance of an offered statement lies solely in the fact that it was made, no issue is raised as to
     the truth of anything asserted, and the statement is not hearsay.")

28

CASE NO. 11-cv-01230-RS

*Lyons*, 461 U.S. 95, 111 (1983)); *Armstrong v. Davis*, 275 F.3d 849, 860–61 (9th Cir. 2001) (plaintiff must show she is "realistically threatened by a repetition of the violation") (emphasis in original) (quoting Lyons, 461 U.S. at 109)).

Additionally, regardless of any past injury, plaintiffs have not shown that they face a certainly impending future injury sufficient to constitute injury in fact on its own. The Supreme Court has "repeatedly reiterated that 'threatened injury must be certainly impending to constitute injury in fact' and that '[a]llegations of possible future injury' are not sufficient." *Clapper v. Amnesty Int'l., USA*, 133 S. Ct. 1138, 1147 (2013) (emphasis in original); *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). Plaintiffs' suggestion that they may one day purchase a recalled product and not receive what they contend is appropriate and adequate notice, is an allegation of "possible future injury," and does not satisfy the "certainly impending" standard. Accordingly, Hensley-Mclean and Duncan lack standing to pursue this action and their claims must be dismissed.[8]

C. Leave to amend

Plaintiffs have separately moved for leave to add two additional plaintiffs and class representatives: (1) Martha Smith, who is alleged on several occasions to have purchased recalled products, including "Hot Pockets," from Safeway's wholly-owned southern California subsidiary, Von's, and (2) Eleanor Tate who allegedly made purchases from Vons in 2012 of recalled mangoes, yellow onions, and romaine lettuce. Ordinarily, the propriety of a motion to amend is determined by ascertaining the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility. *Griggs v. Pace Am. Group, Inc*., 170 F.3d 877, 880 (9th Cir.

---

[8]   Plaintiffs suggest in passing that even if they lack standing under Article III, remand to state court, where this action originated, would be warranted rather than dismissal. While Article III does not control standing under state law, with the result that states are not precluded from adopting broader standing rules in their courts, plaintiffs have not shown that they would be permitted under California law to pursue the claims advanced in this action absent having purchased any recalled goods.

1   1999). "Generally, this determination should be performed with all inferences in favor of granting

2   the motion." *Id.*

3          Here, while asserting that the usual factors do not favor amendment, Safeway rests its

4   principal opposition on the holding in *Lierboe, supra,* 350 F.3d 1018. In *Lierboe*, the court vacated

5   certification of a class after the sole named plaintiff was found to lack standing to bring the claims.

6   350 F.3d at 1022–23. The court then addressed the question "whether the suit must be dismissed

7   without more, or if other proceedings may follow under which it may be possible that the suit can

8   proceed as a class action with another representative." *Id*. at 1023. While recognizing the judicial

9   economy considerations in favor of allowing the case to continue, the court found persuasive the

10  approach in *Foster v. Center Township of LaPorte County*, 798 F.2d 327, 244–45 (7th Cir.1986),

11  which dismissed a case where the sole named plaintiff never had standing and was never a

12  member of the class she purported to represent. *Lierboe*, 350 F.3d at 1023. The court concluded

13  that, "because this is not a mootness case, in which substitution or intervention might have been

14  possible, we remand this case to the district court with instructions to dismiss." *Id*. Thus, *Lierboe*

15  stands for the proposition that where the original named plaintiff lacks standing, a new plaintiff

16  with standing cannot step in to save the lawsuit from dismissal.

17         Plaintiffs contend *Lierboe* does not foreclose amendment here because when the suit was

18  originally filed, it included an additional plaintiff, Jennifer Rosen, who undisputedly had

19  purchased recalled eggs, and therefore had standing.[9]  Rosen withdrew from the action in May of

20  2014, allegedly because of a family conflict that arose when her uncle became a Safeway board

21  member.  Plaintiffs contend this is therefore a "mootness" situation—where a post-filing event

22  destroying one plaintiff's ability to proceed does *not* foreclose another class member from

23  stepping forward.  *See Wade v. Kirkland*, 118 F.3d 667, 669 (9th Cir. 1997) (suggesting possibility

24

25  ―――――――――――――
    [9]   While Safeway concedes Rosen purchased recalled eggs, it argues she nevertheless lacked
26  standing because she received actual notice of the recall.  Safeway has not made a persuasive
    showing, however, that the notice Rosen received would have deprived her of standing to make
27  the claims advanced in this action.

28

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1  of allowing intervention of "putative class members with live claims" in the event mootness of

2  named plaintiff's claim precluded him from proceeding.

3      It is questionable whether Rosen's withdrawal from the suit should be labeled as having

4  given rise to "mootness."  Regardless of terminology, however, and regardless of whether Rosen's

5  abandonment of her claim should be seen as a voluntary act or not, plaintiffs are correct that this is

6  *not* a situation like *Lierboe* where standing, and therefore subject matter jurisdiction, was absent

7  from the outset.  While it is true that the initial attempt to replace Rosen proved defective, there is

8  no sound basis for denying leave to amend at this juncture, given that the jurisdiction of the Court

9  was properly invoked in the first instance.   Accordingly, the motion for leave to amend is granted.

10

11      D.  Sealing motions

12      Safeway has filed three sealing motions in connection with these matters, proposing that

13  certain "confidential business information" of Safeway, and "personal shopping and transaction

14  information" of the named plaintiffs not be disclosed in the public record.  Plaintiffs have not

15  submitted any declarations to support the sealing of their information, which does not in any event

16  appear to be so sensitive or private as to warrant sealing.   Safeway's conclusory invocation of

17  "confidential" with respect to certain of its practices likewise does not support sealing.  The

18  information appears to be largely general and benign, such that Safeway would not suffer

19  competitive or other harm from its disclosure.  Accordingly, unless within 5 days of this order,

20  Safeway and/or plaintiffs submit further declarations establishing that some specific subset of the

21  information contained in the redacted portion of Safeway's papers does genuinely qualify to be

22  omitted from the public record, the sealing motions will be denied in their entirety, and Safeway

23  will be expected to file unredacted versions of its documents without delay.  If additional

24  declarations are filed, a further order will issue.

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.  CONCLUSION

Pursuant to Rule 12(h)(3), in view of plaintiffs' lack of standing, the claims of plaintiffs Dee Hensley-Maclean and Sarah Duncan are dismissed for lack of subject matter jurisdiction.  The motion for leave to amend is granted.

**IT IS SO ORDERED**.

Dated: June 29, 2015

_____
RICHARD SEEBORG
United States District Judge